**David L. ROBERT, Plaintiff-Appellee,**

v.

**CONTI CARRIERS & TERMINALS, INC., Defendant-Appellant.**

No. 81-3459.

United States Court of Appeals, Fifth Circuit.

Dec. 2, 1982.

L. Walker Allen, II, Lawrence J. Duplass, New Orleans, La., for plaintiff-appellee.

Before RUBIN and JOHNSON, Circuit Judges, and DAVIS *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

It is charged that, in the course of a two-day conventional personal injury case,[1] the trial judge made four errors in admitting testimony, nine errors in failing to give charges requested by the defendant, one error in deciding to give a charge requested by the victorious plaintiff, five errors in the portion of the charge prepared by the judge, and that, in addition, he erred in failing to grant a judgment notwithstanding the verdict as to the plaintiff's contributory negligence and in failing to grant a new trial or remittitur when the jury awarded excessive damages. Because we find no reversible error in the more than score of asserted bad calls, we affirm.

David L. Robert was employed as a deckhand aboard the M/V RUBY E, a push bow type tug used to fleet barges in the Port of New Orleans for Conti Carriers & Terminals, Inc. He was loosening a barge's stern shoreline so two tugs could reposition the barge. The line had an "eye," or wire loop, at its end, and this was placed around a kevel on the barge. While Robert was removing the line, his hands were caught between the eye and the kevel and injured. He was hospitalized for twenty-three days, and underwent six surgical procedures. According to one orthopedist, Robert lost 28% of the function in his right hand and 17% of the function in his left.

The unexceptional issues at trial were whether the captain of the M/V RUBY E was negligent, whether the vessel was unseaworthy, whether Robert was contributorily negligent, and, if the defendant was

Lemle, Kelleher, Kohlmeyer & Matthews, Michael A. McGlone, New Orleans, La., for defendant-appellant.

* District Judge of the Western District of Louisiana, sitting by designation.

1. The plaintiff sought damages under the Jones Act, 46 U.S.C. § 688 (1976).

liable, the extent of Robert's injury. The case was tried to a jury before an experienced trial judge. The jury found for Robert, awarding him $250,000. Following the loss below, Conti turned its legal battleship broadside and fired the salvo that we now consider.

## I. LIABILITY

Pursuant to a requirement of the district court, Robert's counsel prepared a pretrial list of witnesses. For each expert witness, the list indicated the witness' claimed area of expertise. This list was incorporated into the district court's pretrial order. One of the witnesses on the list, Sheldon G. Held, was listed as a "marine surveyor." Conti argues that it was improper for the trial judge to permit Held to testify as a safety expert because safety was not listed as his area of expertise.

A trial judge has broad discretion in deciding whether to admit evidence not included in pretrial orders.[2] Prior to trial, Robert delivered a letter to Conti's counsel outlining the testimony Held was expected to give. His testimony was apparently consistent with his report. Conti does not contend it was in any way surprised by the testimony. The testimony was, therefore, properly admitted.

Conti has numerous complaints regarding the jury charges. It proposed fourteen special charges, many tendentious in phrasing. The trial judge selected among them carefully, giving some, rejecting most. Many of Conti's complaints are based on insignificant language variations. Thus:

| REQUEST | CHARGE CLAIMED TO BE INSUFFICIENT |
|---|---|
| In this regard, you are charged that a vessel owner is not obligated to furnish a so-called "accident proof ship" and the occurrence of an accident thereon should not lead you to find necessarily that the vessel was unseaworthy. | The vessel owner does not undertake, and it is not incumbent upon him, to provide an accident proof vessel. The mere fact that you may find that an accident occurred and plaintiff was injured, without more, does not establish that the vessel was unseaworthy. |

The district court was clearly justified in rephrasing Conti's proposed instructions to make them not only more impartial but more clear.

The trial judge is not required to give a flawless instruction suitable for publication in a treatise. "[T]he test is not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues."[3] The jury was properly guided in its deliberations. We have reviewed the nine suggested defects, and we find such slight merit in each that a detailed review of each would give the factitious arguments more substance than they deserve.[4]

The criticism of the court for giving charges requested by the plaintiff also

---

2. *See Lirette v. Popich Bros. Water Transp., Inc.,* 660 F.2d 142, 144–45 (5th Cir.1981); *Newman v. A.E. Staley Mfg. Co.,* 648 F.2d 330, 333 (5th Cir.1981); *Keyes v. Lauga,* 635 F.2d 330, 335 (5th Cir.1981); *Calamia v. Spivey,* 632 F.2d 1235, 1237 (5th Cir.1980).

3. *Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149, 1178 (5th Cir.1982). *Accord, Howard v. General Cable Corp.,* 674 F.2d 351, 356 (5th Cir.1982); *Bass v. International Bhd. of Boilermakers,* 630 F.2d 1058, 1065 (5th Cir. 1980).

4. As to one failure to give a charge in the haec verba suggested, the complaint is: "The law is much stronger than this." As to another: "The charge . . . was not strong enough." As to yet another: "[T]he charge offered . . . was not nearly strong enough." One part of the charge regarding the mitigation of damages was "very general;" another was not "nearly strong enough" and not "forcefully" stated.

turns on the language used. Conti charges the district court with "parroting exactly" the language proposed by plaintiff. The district judge is to be no more faulted for adopting pertinent and well-chosen sentences than he is for failing to use words he considered inappropriate or simply not in his own style. So long as the substance of the instruction is accurate, its source is irrelevant.

Although the court gave no instruction concerning inflation, Conti complains that this alarming word was used in the presence of the jury during the questioning of Robert's economist.[5] The uses were innocuous.[6] Moreover, in the light of our en banc decisions in *Culver v. Slater Boat Co.*, 688 F.2d 280 (5th Cir.1982) and *Byrd v. Heinrich Schmidt Reederi*, 688 F.2d 324 (5th Cir.1982), the error, if any, was harmless.

The admission of photographs of Robert's hands taken during the period of his hospitalization was clearly within the district judge's discretion.[7] Although five photographs were offered, the trial judge admitted only two. We have examined these and find that they had probative value and were not unfairly prejudicial. The pictures depicted Robert's hands on the sixth and eighth days after his injury. The condition of Robert's hands was clearly relevant to his claim for pain and suffering.

## II. DAMAGES

Conti presented evidence that Robert could work in the future and stresses that a vocational rehabilitation expert testified that Robert could be rehabilitated. It contends, therefore, that the court improperly admitted an economist's testimony concerning Robert's future lost income because the economist was asked to assume that Robert would, in the future, earn only the minimum wage. Two orthopedists, however, testified that Robert could not return to work as a deckhand. There was testimony by an occupational therapist that Robert could not work in any of the jobs he had held in the past: deckhand, marine shop operator, or general construction worker. Indeed, the therapist testified that, while Robert would be able to work safely at unskilled, minimum wage positions, she could not think of any manual labor having a higher pay classification that he could perform safely and competently. While the therapist was not a vocational rehabilitationist, she was competent to testify con-

---

5. The word "inflation" appears ten times in the record of the economist's testimony. On five occasions, it was used at a bench conference. The term was used by Robert's counsel four times. Finally, the economist used the term once in responding to Conti's cross-examination.

6. The district court ruled that the witness could not testify to the effect of inflation on Robert's lost earnings. Therefore, Robert's counsel's questions concerning lost earnings often included the disclaimer "if we do not include anything for inflation." Each time the term was before the jury, a similar disclaimer was made.

   It is, of course, conceivable that counsel's repeated use of the term made the jury aware of the problem of inflation. Even if we were to assume, however, that this was improper, Conti failed to object to the use of the word, or to request an instruction that the jury should disregard it. Therefore, Conti has waived any claim of error. *See Seymour v. Olin Corp.*, 666 F.2d 202, 210 (5th Cir.1982); *Dietz v. Consoli-*

dated *Oil & Gas, Inc.*, 643 F.2d 1088, 1094 (5th Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 513, 70 L.Ed.2d 385 (1981).

7. Although the district court has authority to exclude relevant evidence if the potential for prejudice outweighs the evidence's probative value, Fed.R.Evid. 403, it has broad discretion in deciding whether or not to exercise that authority. *F & S Offshore, Inc. v. K.O. Steel Castings, Inc.*, 662 F.2d 1104, 1107 (5th Cir. 1981) (per curiam); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1347 (5th Cir.1978). In reviewing the district court's decision, we assume the maximum probative force and the minimum prejudice to be reasonably expected. *F & S Offshore, Inc. v. K.O. Steel Castings, Inc.*, supra, 662 F.2d at 1107. We will disturb the district court's ruling only in cases of clear abuse. *Excel Handbag Co. v. Edison Bros. Stores, Inc.*, 630 F.2d 379, 388 (5th Cir.1980) (per curiam); *John Hancock Mut. Life Ins. Co. v. Dutton*, 585 F.2d 1289, 1295 (5th Cir.1978); *Wright v. Hartford Accident & Indem. Co.*, 580 F.2d 809, 810 (5th Cir.1978) (per curiam).

cerning Robert's physical limitations.[8] There was, therefore, a jury question concerning whether or not Robert would be able to earn as much in the future as he had in the past. This laid a sufficient foundation for the testimony concerning lost future wages.

▪ The one serious issue raised by the appeal is the objection to an instruction permitting the jury to "consider the fact that the plaintiff would likely have received periodic increases in pay, as a result of increased skill, seniority, and like factors"[9] in the absence of any evidence in the record that Robert or others similarly situated were likely to receive such increases. The language appears to be taken from an opinion in *Hamilton v. Canal Barge Co.*, 395 F.Supp. 978, 991–92 (E.D.La.1975). *Hamilton,* however, was a bench trial in which evidence was offered that such increases were likely. The case thus cannot support an instruction that a jury may consider as fact something neither proved nor judicially noticed.[10]

In *Higginbotham v. Mobil Oil Corp.*, 545 F.2d 422 (5th Cir.1977), *rev'd on other grounds,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), an economist, estimating lost future earnings, used a five percent figure for estimating future annual wage increases. The five percent figure was based upon the decedent's average past annual wage increases. We held that the resulting award was too speculative. At that time this circuit did not allow consideration of inflation in setting damages. We, therefore, remanded the case to enable the plaintiff to prove precisely what part of the decedent's past raises were actual rewards for increased productivity, stating: "to recover at all for future raises, plaintiff must bear the difficult burden of proving what portion of the increases would have been given other than as an automatic hedge, against inflation." *Id.,* at 435.

*Culver v. Slater Boat Co.*, 688 F.2d 280 (5th Cir.1982) and *Byrd v. Heinrich Schmidt Reederei*, 688 F.2d 324 (5th Cir.1982), demonstrate that this circuit's position on inflation and damages has changed dramatically since the time of *Higginbotham.* Even in the light of *Culver* and *Byrd,* however, the instruction given was erroneous, because it instructed the jury to accept as fact something about which there was no evidence.[11] We must consider, therefore, the prejudicial

---

**8.** An expert's qualifications depend on her "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. The trial court is afforded the "widest possible discretion" in deciding whether a witness qualifies as an expert. *Dunn v. Sears, Roebuck & Co.,* 639 F.2d 1171, 1174 (5th Cir.), *modified on other issues,* 645 F.2d 511 (5th Cir.1981); *Ludlow Corp. v. Textile Rubber & Chem. Co.,* 636 F.2d 1057, 1060 (5th Cir.1981); *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1322, 1326 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2283, 2308, 73 L.Ed.2d 1294, 1309 (1982).

**9.** The full text of this instruction is:

When determining damages for loss of future earnings, you may consider the fact that the plaintiff would likely have received periodic increases in pay as a result of increased skill, seniority, and like factors. Even if never promoted, young workers can be expected to increase his skills [sic] and productivity and can be expected to receive appropriate pay increases for these factors.
Robert was actually paid $54 a day at the time of his injury and had been promised a raise to $60 a day when he completed three months on

the job. The challenged instruction seems to refer not to this one promised increase as a result of on-the-job experience, but *increases* (more than one) recurring *periodically* (*i.e.* at more than one interval).

**10.** Fed.R.Evid. 201(b) allows the trial court to notice a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." We need not determine here whether the likelihood of future merit increases in pay would have been a proper subject for judicial notice.

**11.** Robert's failure to produce evidence of the possibility of future merit increases may have been attributable in part to the difficulty of separating the "merit" portion of past pay increases in the industry from the "inflationary" portion of such increases. *See Culver v. Slater Boat Co., supra,* 688 F.2d at 305 n. 39.

effect of this instruction to determine whether a new trial is necessary.[12]

The evidence warranted the jury in finding that Robert lost $93,000 in future earnings apart from any possible periodic future increases. There was uncontroverted evidence that he lost $7,500 in past wages. Finally, there was evidence that Robert lost $32,300 in future meals and lodging that would have been provided to him had he continued working as a deckhand. The total award, including damages for permanent disability and pain and suffering was $250,000.

In a new trial the jury would be permitted to reconsider the discount factor[13] and Robert would be allowed to offer evidence of the likelihood that he would receive future wage increases. *Culver v. Slater Boat Co., supra,* 688 F.2d at 305–306. Considering all of these factors, we do not find that Conti was prejudiced by the charge, and we think a new trial would be a needless imposition on the parties and the court.

The remainder of the issues can be dealt with summarily. Our observations concerning the loss of earnings necessarily indicate that the jury's damage award was not excessive.[14] Finally, while the record contains evidence from which the jury might have found Robert contributorily negligent, it also contains evidence to support the jury's finding that he was not. We do not sit as a super jury to reevaluate the conclusions of the jury that heard the evidence or to grade its verdict. Because there was sufficient evidence to present a jury question as to contributory negligence,[15] and the trial judge denied a new trial, finding the evidence was sufficient to support the verdict,[16] Conti's attempt to reargue the contributory negligence issue to us as if we were an appellate jury of three must fail.

For these reasons, the judgment is AFFIRMED.

12. *See* Fed.R.Civ.P. 61: "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

13. Robert's counsel first asked his economist to testify as to Robert's lost future wages assuming a six percent annual increase in pay and applying a seven and one-half percent discount rate. Conti objected to the consideration of an annual increase as violative of *Higginbotham, supra.* The district court sustained the objection and Robert's counsel therefore asked the economist to apply the discount but not the annual increase.
In light of *Culver v. Slater Boat Co., supra* and *Byrd v. Heinrich Schmidt Reederei, supra,* Robert would, in a new trial, be entitled to prove that the discount rate should be adjusted to account for future inflation.

14. This court will overturn a jury verdict for excessiveness only upon the strongest of showings. *Martin v. City of New Orleans,* 678 F.2d 1321, 1326 (5th Cir.1982); *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 934 (5th Cir.1982). The size of the award is essentially a finding of fact, and primary responsibility for such a finding rests with the jury and the trial court. *Id.* Thus, we will reverse an award as excessive only if it "clearly exceeds the amount that *any* reasonable man could feel the claimant is entitled to." *Id.* (emphasis in original), or if it is

"so gross ... as to be contrary to right reason." *Bailey v. Southern Pac. Transp. Co.,* 613 F.2d 1385, 1390 (5th Cir.) (per curiam), *cert. denied,* 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980).

15. In Jones Act cases the evidence is sufficient to present a jury question "unless there is a complete absence of probative facts." *Alvarez v. J. Ray McDermott & Co.,* 674 F.2d 1037, 1042 (5th Cir.1982). *Accord, Comeaux v. T.L. James & Co.,* 666 F.2d 294, 298 n. 3 (5th Cir. 1982); *Robinson v. Zapata Corp.,* 664 F.2d 45, 47 (5th Cir.1981); *Allen v. Seacoast Prods., Inc.,* 623 F.2d 355, 360 (5th Cir.1980). This standard is distinctly different from the "reasonable minds" sufficiency test applied in most cases. *See Maxey v. Freightliner Corp.,* 665 F.2d 1367, 1371 (5th Cir.1982) (en banc); *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc).

16. This court reviews the denial of a motion for a new trial only for abuse of discretion. *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 930 (5th Cir.1982). So long as "a reasonable basis exists for the jury's verdict," we will not disturb the district court's ruling. *United States v. 329.73 Acres of Land,* 666 F.2d 281, 284 (5th Cir.) *rehearing en banc granted,* 681 F.2d 264 (5th Cir. 1982).