Marshall COBURN

v.

BROWNING ARMS COMPANY.

Civ. A. No. CI 80–1318.

United States District Court,
W.D. Louisiana,
Shreveport Division.

June 2, 1983.

A. Kennon Goff, III, Goff & Goff, Ruston, La., for plaintiff.

Caldwell Roberts, Mayer, Smith & Roberts, Shreveport, La., for defendants.

### AMENDED AND SUBSTITUTED RULING AND ORDER ON POST–TRIAL MOTIONS

POLITZ, Circuit Judge, Sitting by Designation.

This matter is before the court on defendants' motion for judgment notwithstanding the verdict and alternate motion for new trial or remittitur, and plaintiff's motion for attorneys' fees and expenses. Considering the evidence adduced at hearing, the pleadings, briefs and arguments of the parties, in light of the evidence adduced at trial, the court enters the following Ruling and Order.

*Motion for Judgment Notwithstanding the Verdict*

Defendants ask that the verdict be set aside and judgment entered in their favor, reurging the reasons advanced at trial in support of their motion for directed verdict. First, assuming *arguendo* that the subject shotgun was unreasonably dangerous at the time of the accident, defendants contend that the evidence unequivocally establishes that Marshall Coburn fully understood and voluntarily exposed himself to the danger

thus presented, barring his recovery. The jurors' failure to so find, defendants argue, attests to their disregard of the court's instruction on victim fault.

█ In evaluating the propriety of a judgment n.o.v. or directed verdict, the court is bound by the guidelines announced in *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc). Consistent therewith:

a motion for directed verdict or for judgment n.o.v. should be granted only when the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. The court should consider all of the evidence—not just that evidence which supports the nonmovant's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If there is substantial evidence . . . of such quality and weight that reasonable and fairminded persons in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. A motion for directed verdict or judgment n.o.v. should not be decided by which side has the better of the case, nor should the motion be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of fact, and not the court, to weigh conflicting evidence and inferences, and to determine the credibility of witnesses.

*Maxey v. Freightliner Corp.,* 665 F.2d 1367, 1371 (5th Cir.1982) (en banc) (citation omitted). Where a party who bears the burden of persuasion on a particular issue seeks a judgment notwithstanding the verdict on that issue, he must establish that the evidence in support of the motion "is so one-sided as to be of overwhelming effect." *Grey v. First Nat'l Bank in Dallas,* 393 F.2d 371, 380 (5th Cir.), *cert. denied,* 393 U.S. 961, 89 S.Ct. 398, 21 L.Ed.2d 374 (1968). *Accord, Goforth v. Dutton,* 409 F.2d 651 (5th Cir.1969).

The court is not persuaded of the propriety of judgment n.o.v. herein. Turning first to defendants' contention that the jury was erroneously instructed on victim fault, the court is convinced that Louisiana jurisprudence cannot be so broadly construed as to warrant submission of the defense of contributory negligence to the jury in a strict products liability suit.

Preliminarily, it must be noted that the court submitted to the jury, without substantive alteration, the proposed instruction on victim fault submitted by defendants at the beginning of the trial.[1] This instruction

---

1. Defendant's proposed charge, dated August 16, 1982, provides:

PROPOSED JURY CHARGE

Defendants request that the Court give the jury the attached special charge in the event the Court does not give the contributory negligence charge contained in the last two paragraphs of the first "Defendants' Charge No. ____," which was contained in the "Proposed Jury Charges" submitted on or about June 21, 1982.

\* \* \* \* \* \*

If you conclude that the plaintiff has established the elements of his case, then you must determine whether the defendants have proven that the plaintiff has nonetheless relieved the defendants of responsibility for the harm caused to the plaintiff by assuming the risk of that harm, or voluntarily encountering a known unreasonable risk. If you find that the plaintiff assumed the risk of harm that happened to him, or voluntarily encountered a known unreasonable risk, then you must render a verdict for the defendants. On this issue, the defendants have the burden of proof.

To conclude that the plaintiff assumed the risk of harm, or voluntarily encountered a known unreasonable risk, you must find that the defendants have proven two (2) things by a preponderance of the evidence: (1) That the plaintiff fully understood the danger which was involved in using the product, and (2) that the plaintiff then voluntarily exposed himself to the danger, or risk of harm. In this connection, you must determine the question on the basis of what this plaintiff in this lawsuit understood and what he encountered voluntarily. If the plaintiff discovered the defect and nevertheless proceeded to make use of the product and was injured thereby, he is barred from recovery and you must return a verdict for the defendants.

differed from the instruction earlier requested.[2] The court therefore perceives no merit in this objection. Recognizing, however, that the defendants vigorously advocated incorporation of the "reasonable man" rubric in the challenged instruction during the charge conference, and that the viability of contributory negligence as a defense to a strict liability claim poses a "difficult and unsettled question of Louisiana law," *Branch v. Chevron Int'l Oil Co., Inc.,* 681 F.2d 426, 431 n. 6 (5th Cir.1982), it is appropriate that the court explain the reason for refusing to charge the jury as to the preclusive effect of victim fault in this case under the objective standard advocated by defendants.

Prior to the advent of *Dorry v. Lafleur,* 399 So.2d 559 (La.1981), a controversial plurality opinion authored by an *ad hoc* Justice of the Louisiana Supreme Court, federal courts applying Louisiana law had assumed that contributory negligence was not encompassed within the "victim fault" defense to a strict liability action. *Alford v. Pool Offshore Co.,* 661 F.2d 43 (5th Cir.

1981); *Rodrigue v. Dixilyn Corp.,* 620 F.2d 537 (5th Cir.1980), 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); *Khoder v. AMF, Inc.,* 539 F.2d 1078 (5th Cir.1976). In *Dorry,* which arose out of an Article 2322 claim, Louisiana's highest court remarked in *dicta* that policy reasons would support the application of contributory negligence in strict liability cases where the defendant's conduct is "neither ultrahazardous nor unnatural to the locality, and produce[s] no income to the defendant." *Id.* at 561. The court further opined that circumstances under which a complainant's contributory negligence would foreclose imposition of strict liability upon a defendant must be defined on a case-by-case basis. *Id.*

Notwithstanding this expansive language, the *Dorry* court rejected contributory negligence in favor of the assumption of risk defense, inasmuch as the "ruined" building which spawned the litigation housed a commercial enterprise to which the plaintiff had tendered the price of admission. In accordance with the definition of the assumption of risk doctrine set forth

*Alford v. Pool Offshore Company,* 661 F.2d 43, 45 (5th Cir.Ct. of App.1981); *Rodrigue v. Dixilyn Corporation,* 620 F.2d 537 (5th Cir.Ct. of App.1980); *Lebouef v. Goodyear Tire and Rubber Company,* 623 F.2d 985 (5th Cir.Ct. of App.1980).
The Court submitted the following instruction on victim fault:

Jury Instruction No. 10
·If you conclude that the plaintiff has established the elements of his case, then you must determine whether the defendants have proven that the plaintiff has nonetheless relieved the defendants of responsibility for the harm caused to the plaintiff by assuming the risk of that harm, or voluntarily encountering a known unreasonable risk. On this issue, the defendants have the burden of proof. ,
To conclude that the plaintiff assumed the risk of harm, or voluntarily encountered a known unreasonable risk, you must find that the defendants have proven two (2) things by a preponderance of the evidence: (1) That the plaintiff fully understood the danger which was involved in using the product, and (2) that the plaintiff then voluntarily exposed himself to the danger, or risk of harm. In this connection, you must determine the question on the basis of what this plaintiff in this lawsuit understood and what he encountered voluntarily. If the plaintiff discovered the defect and nevertheless

proceeded to make use of the product and was injured thereby, he is barred from recovery and you must return a verdict for the defendants. If you find that the plaintiff assumed the risk of harm that happened to him, or voluntarily encountered a known unreasonable risk, then you must render a verdict for the defendants.

2. On June 22, 1982, defendants requested submission of the following instruction, here excerpted in pertinent part:

\* \* \* \* · \* \*

One of the defenses which the law permits a manufacturer to raise is that the injured person was himself at fault and thereby helped cause his own injury. If you conclude that the plaintiff's conduct in this incident was a substantial deviation from the conduct which we would normally expect of a reasonably prudent person, or that the plaintiff either understood, or should have understood, the danger which was involved and nevertheless exposed himself to the danger, then you must return a verdict for the defendant.
On this defense, the defendant has the burden of proof, and must convince you by a preponderance of the evidence that the plaintiff acted in the manner I have just described.
Modified from *Louisiana Civil Jury Instructions—Civil* by H. Alston Johnson at pages 189, 210, 307 and 41.

in the *Restatement (Second) of Torts,* the court explicitly refused to sanction the incorporation of an objective element in the doctrine. *Id.* at 563.

This unequivocal repudiation of a "reasonable man" standard was tempered to some degree by the observation that:

> This is not to say that the plaintiff's disclaimer of knowledge or appreciation must be taken at face value. This is a fact question. And there are some risks that every man *must* be held to appreciate, (see Restatement, supra, comment d). There is a plain difference, however, between what one *must* have known (a finding of actual knowledge) and what one *should* have known (the imposition of an objective standard of care).

*Id.* Contrary to defendant's assertion, however, the court does not believe this passage effects a modification of the assumption of risk concept, as traditionally applied in Louisiana and as embodied in the *Restatement (Second) of Torts.*

More recently, in *Kent v. Gulf States Utilities Co.,* 418 So.2d 493 (La.1982), the state supreme court further refined the Louisiana concept of strict liability as delineated in article 2317 and, by inference, article 2322. According to the court, application of the strict liability doctrine merely relieves a plaintiff of the onus of proving the defendant's active or constructive knowledge of the risk of harm engendered by its conduct. Hence:

> the *standard for determining liability* is to presume the owner's knowledge of the risk presented by the thing under his control and then to determine the reasonableness (according to traditional notions of blameworthiness) of the owner's conduct, in the light of that presumed knowledge.

*Id.* at 497 (emphasis is the original). *Kent's* fault, if any, was not evaluated within the framework of the strict liability paradigm. *Id.* at 500.

In *dicta,* the *Kent* court remarked that a presumption of the manufacturer's knowledge of the dangerous condition of its product exists in strict products liability cases,

once the plaintiff establishes that the product presents an unreasonable risk of injury in normal use. The conclusive presumption of knowledge thus created in effect gives rise to a presumption of negligence. 418 So.2d at 498 n. 6. At least one intermediate appellate court has relied on the *Kent* rationale in ruling that the term "victim fault," as applied in the context of a strict products liability action, referred to the defenses of contributory negligence and assumption of risk. *Lovell v. Earl Grissmer Co., Inc.,* 422 So.2d 1344 (La.App. 1st Cir. 1982). Reasoning from *Kent's* statement that a defendant's fault in strict liability actions, except for the imputation of knowledge to the defendant, was to be measured against traditional negligence principles, the *Lovell* court determined that the victim's contributory negligence must be likewise considered. Another panel of the First Circuit, on the same date, issued an opinion in consolidated cases announcing unequivocally that contributory negligence was not a defense to article 2317 claims occasioned by the state's failure to maintain its highways. *Payne v. Louisiana Dept. of Transp. & Devlpt.,* 424 So.2d 324 (La.App. 1982). The court thereafter opined, in a strict products liability case, that "[v]ictim fault in product liability cases is usually in the form of assumption of risk, that is, the voluntary and unreasonable use of the product with the full knowledge and appreciation of its defect and the danger involved." *Harris v. Atlanta Stove Works, Inc.,* 428 So.2d 1040, 1043 (La.App. 1st Cir.1983).

In *Hyde v. Chevron U.S.A., Inc.,* 697 F.2d 614 (5th Cir.1983), a drilling contractor's employee sued the owner of an offshore oil well drilling platform for injuries sustained in his slip and fall from a staircase on the platform. After conducting an exhaustive, case-by-case analysis of *Kent* and other post-*Dorry* decisions involving strict liability claims premised on articles 2317 and 2322, the Fifth Circuit concluded "that the Louisiana doctrine of strict liability encompasses elements of negligence, at least, in determining the test of the defendant's liability and the victim's fault." *Id.* at 628.

In summarizing its holding, the panel declared that the defense of "victim fault" must be deemed to include ordinary contributory negligence, and may be interposed in an article 2322 action if such negligence is a substantial cause of the injury. This statement was qualified by the panel's recognition that contributory negligence and victim fault were not necessarily synonymous in Louisiana jurisprudence. *Id.* at 629.

While cognizant of the apparent theoretical inconsistency inherent in the preclusion of the contributory negligence defense in products cases and the existence of a presumption of manufacturer negligence under Louisiana law, *see Kent,* we are satisfied that the teachings of *Dorry* and its progeny do not undermine the doctrinal basis for strict products liability first explicated in the seminal case of *Weber v. Fidelity & Cas. Ins. Co.,* 259 La. 599, 250 So.2d 754 (1971). *See Hastings v. Dis Tran Prods., Inc.,* 389 F.Supp. 1352 (W.D.La.1975) (*Weber* purported to fashion a products doctrine identical with that prescribed in the *Restatement (Second) of Torts* § 402A; under such, contributory negligence is not a defense in a strict products liability case); *see also* Robertson, Manufacturers' Liability for Defective Products in Louisiana Law, 50 Tulane L.Rev. 50 (1975). The policy reasons warranting application of the contributory negligence defense in article 2317 and 2322 cases do not obtain in products liability litigation, where the manufacturer's affirmative act of distributing its unreasonably dangerous product in the stream of commerce eventually culminates in consumer injury:

> Until recently, it has been held invariably that contributory negligence is no defense to strict liability. *Langlois v. Allied Chemical Corp., Inc.,* 258 La. 1067, 249 So.2d 133 (1971). But this rule is borrowed largely from the common law as applied in other states. There, strict liability is imposed because social policy requires that those who profit by engaging in ultrahazardous or abnormally dangerous activities, and those who create such conditions, or those engaged in the manufacture of products, must pay their way.

> As Prosser states:

> "The courts have tended to lay stress upon the fact that the defendant is acting for his own purposes, and is seeking a benefit or a profit of his own from such activities, and that he is in a better position to administer the unusual risk by passing it on to the public than is the innocent victim." Prosser, *Law of Torts,* 4th Ed., (1971), p. 495.

> Again, it is this social policy, rather than logic, which traditionally prevents courts from recognizing contributory negligence as a defense. The illogic of this principle, as Prosser puts it, is that "the fault of the plaintiff will relieve the defendant of liability when he is negligent, but not when he is innocent." Id. at 522.

The Louisiana Civil Code sometimes imposes strict liability for conduct which would not necessarily warrant the imposition of strict liability under the common law tradition. Where this is the case, there can be no basis for applying the social policy, borrowed from the common law, which prohibits contributory negligence as a defense.

Louisiana jurisprudence has already provided the basis for this conclusion. *Loescher v. Parr,* 324 So.2d 441 (La.1975), which held for the first time that Art. 2317 "fault" is grounded in strict liability, recognized "victim fault" as an available defense to liability under that article.

While the Civil Code does not define "fault", there can be no doubt that it does encompass negligence. *Langlois, supra.* More recent decisions have gone so far as to equate "victim fault" with contributory negligence. *Edwards v. La.State Dept. of Transportation,* 403 So.2d 109 (La.App. 3rd Cir., 1981); *LeBlanc v. State Department of Highways,* 405 So.2d 635 (La.App. 3rd Cir., 1981); *Godwin v. Government Employees Ins. Co.,* 394 So.2d 751 (La.App. 3rd Cir., 1981); *Korver v. City of Baton Rouge,* 348 So.2d 708 (La.App. 1st Cir., 1977).

The Louisiana Supreme Court in *Dorry v. LaFleur,* 399 So.2d 559 (La.1981), held that the question of whether contributory negligence should be allowed as a defense to strict liability under Art. 2317 is one best decided on a case-by-case basis. That decision did provide a guiding principle, however, in holding that where the policy considerations which traditionally require the imposition of strict liability are lacking (i.e., where the defendant's conduct concerns neither ultrahazardous activity nor abnormally dangerous activity, *nor liability of a manufacturer for its products, nor the realization of profit from any of these*), the resolution of fault must encompass the victim's contributory negligence.

*Carpenter v. State Farm Fire and Cas. Co.,* 411 So.2d 1206, 1210 (La.App. 4th Cir.1982) (emphasis added) (article 2317 suit against City of New Orleans, homeowner and insurer, based on injuries suffered as a result of plaintiff's fall on sidewalk abutting homeowner's property; contributory negligence defense allowed).

Similarly, the Louisiana Second Circuit Court of Appeal commented that contributory negligence may be asserted as a defense to article 2317–2322 liability:

only where the policy considerations imposing the liability on the defendant in the first place are not present, such as where the defendant's conduct is not ultrahazardous, not abnormally dangerous, is not that of a manufacturer whose product causes injury, and is not commercial in the sense that it is designed to render a profit. Where these policy considerations are not present victim fault includes contributory negligence. *Dorry, supra; Carpenter, supra.*

*Falgout v. Wardlaw,* 423 So.2d 707, 709 (La.App. 2d Cir.1982) (emphasis added) (suit against property owner, spouse and brother for injuries suffered as a result of fall on owner's pier). One authority is of the opinion that contributory negligence is not available as a defense to a strict products liability claim, whether predicated on tort notions of implied warranty or legal fault based on public policy. F. Stone, 12 Louisiana Civil Law Treatise; Tort Doctrine, § 439 (1982 Supp.). *Accord,* Note, Contributing Negligence—When Should it be a Defense in a Strict Liability Action?, 43 La.L. Rev. 801 (1983).[3] *See generally Harris v. Atlanta Stove Works, Inc.; Verrett v. Cameron Tel. Co.,* 417 So.2d 1319, 1327 (La.App. 3d Cir.1982) (rejecting contributory negligence defense in article 2317 suit by employee against employer and another telephone company, both "custodians" of electric wires which caused injury, stating that victim fault in such cases is "usually in the form of assumption of risk [or] ... voluntary and unreasonable use of the product with full knowledge and appreciation of its defect and the danger involved.").

**3.** This commentator observes that:

contributing negligence is not currently recognized by the courts as a defense in strict products liability actions. The great weight of authority suggests that in the products area, only plaintiff's conduct which constitutes an independent and superseding cause or which rises to the level of assumption of risk will be a defense to the strict liability action. In fact, most courts (and especially the federal courts) seem to think that Louisiana will stay in line with Section 402A of the Restatement (Second) of Torts as to strict products liability; that section permits only assumption of risk as a defense.

43 La.R.Rev. at 805. As to when a contributory negligence defense should be available in a products case, the author opines:

Initially, it must be emphasized that the plaintiff's negligence should be a defense in strict liability actions *only* if comparative principles can be applied. If the comparative negligence statute cannot be applied, the plaintiff's negligence, if allowed as a defense, will function as an absolute bar to his recovery; consequently, some of the very policies which fostered the strict liability theories will be defeated. For instance, allowing the plaintiff's fault to operate as a complete bar would place the *entire* loss on the party least able to bear and distribute it; it might also reduce the financial exposure of defendants to the point that it becomes more economical to maintain product defects and substandard practices than to correct them. Thus, the policies underlying strict liability, such as enterprise liability or loss distribution, would be frustrated.

*Id.* at 807 (emphasis in the original).

■ Guided by the foregoing policy considerations, the court holds that a victim's ordinary contributory negligence cannot be raised defensively by a manufacturer in a strict products liability action under Louisiana law. This holding finds ample support in a recent Fifth Circuit decision. In *Bell v. Jet Wheel Blast, Div. of Ervin Indus.,* 706 F.2d 6 (5th Cir.1983), the Court of Appeals reaffirmed Judge Tate's pronouncement in *Rodrigue v. Dixilyn Corp.* that assumption of risk alone provides a viable defense to strict liability in Louisiana.

■ Finally, considering the evidence within the analytic framework of *Boeing v. Shipman,* we conclude that the motion for judgment n.o.v. should be denied. Whether or not the gun was defective, whether that defect was attributable to the defendants, whether the injury was foreseeable, whether Coburn's use of the gun at time of injury constituted normal use, whether he was aware or unaware of the danger involved in dusting and cleaning inside the gun cabinet, and whether he voluntarily or unreasonably exposed himself to danger were all jury questions, most involving credibility evaluations. The jury resolved these questions in favor of the plaintiff. The court is not prepared to disturb the jury verdict.

### Motion for New Trial

As grounds for relief under Fed.R.Civ.P. 59(a), defendants argue that (1) the jury did not follow the court's instructions, in that its verdict was against the weight of the evidence, (2) the court erroneously instructed the jury on the principles of victim fault under Louisiana law, (3) the judgment was excessive, (4) certain prejudicial remarks on the part of Judge Stagg in advance of trial denied defendants a fair trial, and (5) a juror failed to disclose during voir dire certain facts bearing on his possible prejudicial attitude toward defendants.

### Victim Fault Instruction and Evidentiary Basis for Verdict

■ The reasons given in explanation of the denial of defendants' j.n.o.v. motion compel the same result respecting the motion for new trial. The victim fault instruction accurately set forth applicable Louisiana law, and the evidence was sufficient to permit the jury to weigh the conflicting testimony and to find, in conformity with this instruction, that plaintiff did not assume the risk posed by the defective shotgun.

### Excessiveness of Verdict

■ Defendants next argue that the jury's award of $650,000 is so excessive as to warrant a new trial or, in the alternative, remittitur. It is well-settled that a jury's award may not be set aside and a new trial granted unless the award is so exorbitant as to " 'shock the judicial conscience,' indicate 'bias, passion, prejudice, corruption, or other improper motive' on the part of the jury, ... or is 'contrary to all reason.' " *Wood v. Diamond M Drilling Co.,* 691 F.2d 1165, 1169 (5th Cir.1982) (citations omitted). The size of the award is a factual finding to be determined by the jury. *Robert v. Conti Carriers & Terminals, Inc.,* 692 F.2d 22 (5th Cir.1982) ("This court will overturn a jury verdict for excessiveness only upon the strongest of showings." *Id.* at 27 n. 14). Defendants cite a number of Louisiana cases involving lesser damage awards. The Fifth Circuit discounts the value of comparative evaluations of verdicts in different cases as part of the excessiveness analysis in a particular case. *Allen v. Seacoast Prods., Inc.,* 623 F.2d 355 (5th Cir.1980); *Wiley v. Stensaker Schiffahrtsges,* 557 F.2d 1168 (5th Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). Instead, the court must examine the facts presented to this jury.

■ When measured against these standards, the court is compelled to conclude that the jury award is not so excessive that it would be a denial of justice to permit it to stand. Although very generous, the size of the award does not demonstrate passion or prejudice, nor is it contrary to the evidence or the court's instructions. This case does not present one of those "strongest of showings" referred to in *Robert v. Conti Carriers.*

■ Defendants alternatively seek remittitur. Remittitur is inappropriate where the jury's verdict is within "the universe of possible awards which are supported by the evidence." *Bonura v. Sea Land Serv., Inc.,* 505 F.2d 665, 670 (5th Cir.1974). In assessing the propriety of a remittitur, the court must apply the "maximum recovery rule," which entails a calculation of "whether the amount of the award which remains after the remittitur reflects the maximum award which the evidence will support or whether it merely represents the trial court's opinion of what the proper award should have been." *Id. Accord, Delesdernier v. Porterie,* 666 F.2d 116 (5th Cir.1982); *Carlton v. H.C. Price Co.,* 640 F.2d 573 (5th Cir.1981).

According to the parties' stipulation, plaintiff earned the following wages in the years preceding the accident: $16,302.08 (1977), $17,344.32 (1978), and $13,051.94 (January through May 1979). Harlan Phelps, personnel director for plaintiff's employer, testified that the base rate of pay for a person employed as a pipefitter-welder was $7.69 per hour in May 1979 and $10.68 per hour in June 1982. In light of the evidence that Coburn was working an unusual amount of overtime due to personal problems in the spring of 1979, the court believes that use of the $7.69 rate and a 40-hour work week is appropriate in computing lost wages for the remaining seven months of 1979, yielding a total of $8,612.80 for this period. Given the evidence of pay increases accorded employees engaged in plaintiff's occupation during the approximately three-year interval between the accident and trial, the court finds that the parties' suggested base salary of $22,300 per year is a reasonable estimate of wages lost up to and including the time of trial. After taking into account evidence of the value of such additional forms of compensation as company-paid insurance, retirement benefits and vacation pay equivalent to 35% of an employee's yearly salary, this sum should be adjusted upward to $30,105.00. Thus a reasonable award for loss of past wages would total $89,000.00.

From the evidence presented, the jury could fairly conclude that plaintiff's future earning capacity was totally impaired. Employing the mandatory retirement age of 70, the jury could have ascertained Coburn's expected work-life to encompass 16 years from the date of the accident, or 13 years from trial. Testimony on the question of future earnings was limited to that of Mr. Phelps, who spoke only to the prevailing rate of pay for Coburn's occupation in May 1979 and June 1982. While he testified that all employees received uniform non-incentive wage increases on a periodic basis, he did not specify the frequency or amount thereof, nor did he indicate whether such increases varied according to a particular employee classification or would continue in the future. No merit raises had been awarded since the early 1970s.

In tacit acknowledgment of the paucity of evidence bearing on possible increases in Coburn's salary from the time of trial, in August 1982, onward, plaintiff apparently concurs in defendants' suggestion that the court use the figure of $22,300 as a predicate for assessing future earnings, provided it enhance that figure by the value of the subsidiary forms of compensation described above. The evidence justifies utilization of a salary base of $30,105.00 per year in calculating putative earnings over the balance of plaintiff's estimated work-life. Coburn's gross lost earnings, under this formula, total $391,365.00.

■ Under the court's instruction, the jury was obliged to reduce Coburn's future gross earnings to present value. In the event it found adequate reliable evidence of probable increases in future earnings attributable to productivity and other probable economic factors, the jury was instructed that it should consider such evidence in computing future earnings. No testimony, aside from that of Mr. Phelps, was offered to assist the jury in this task. However, it is axiomatic in this circuit that jurors are presumed, in the absence of actuarial or mathematical evidence, to be "capable enough and aware enough of modern economics to be able to reduce gross loss to

present value intelligently once they have been instructed to perform this function." *Bonura v. Sea Land Serv., Inc.,* 505 F.2d at 669. We may safely assume that the jury discounted future loss of wages, reducing the gross total reached by the expedient of simple mathematical extension. A reasonable discounting of the sums of $391,365 and $10,902 (future medical), enhanced by compensation for past wages ($89,000), accrued medical ($11,233), and damages for past and future pain, suffering and loss of enjoyment of normal life functions and experiences, could reasonably result in the sum awarded by the jury. There was evidence, which the jury could accept, reflective of the traumatic and dramatic effect the accident and injury has had on the plaintiff, physically, physiologically and psychologically.

Having determined that the total award does not exceed the maximum amount allowable under the evidence adduced at trial, the court is precluded by the seventh amendment from disturbing the verdict. The motion for new trial, or in the alternative, for remittitur must be denied.

### Judicial Conduct of Voir Dire

■ Voir dire examination was conducted by Judge Tom Stagg, while the undersigned presided at the trial. Defendants suggest that during voir dire Judge Stagg erroneously conveyed to the jury an impression that defendants maintained the gun was intentionally fired, and that this so severely prejudiced their defense as to warrant a new trial. After selection of the jury and prior to commencement of the trial, counsel for defendants requested that the court correct any misconception the jury might have formed. Indeed, counsel for plaintiff were concerned that the jurors might have been misled because Judge Stagg had inadvertently given the wrong date for the accident. Plaintiff's counsel asked the court to correctly inform the jury.

Prior to commencement of opening statements, in brief pre-trial remarks, the undersigned corrected both misstatements. Having done so, the court asked counsel for both parties if they were satisfied. After receiving their assurance, the trial proceeded and counsel began by making opening statements in which they accurately set forth their respective contentions.

Any error that was committed, and any potential prejudice to either party, was cleared up before the first witness was called. Thus the error, if any, was manifestly harmless. Both sets of counsel had ample opportunity to outline their case during opening statement, to adduce evidence in support thereof and to reiterate their position in closing argument. And during the jury charge, the jury was instructed to consider only the evidence in the case in arriving at a verdict; statements by the court and counsel were not to be taken as evidence. *See Rodrigues v. Ripley Indus., Inc.,* 507 F.2d 782 (1st Cir.1974). Further, the jury was instructed in detail as to the law applicable to the parties' respective claims.

### Juror Misconduct

Defendants seek a new trial on the basis of juror Robert Kidd, Jr.'s alleged concealment, during voir dire, of material information bearing on his possible prejudice against the defendant insurer, Liberty Mutual. Specifically, defendants object to Mr. Kidd's nondisclosure of Liberty Mutual's refusal of his father's request that Liberty Mutual extend coverage for damage to a tractor which Kidd, Jr. allegedly caused. Mr. Kidd's failure to reveal the fact that his father's automobile insurance policy was cancelled by Liberty Mutual, effective August 27, 1982, is also challenged as prejudicial.

Before trial, counsel were given leave to submit proposed voir dire questions to Judge Stagg. According to the transcript of the voir dire proceedings, Judge Stagg inquired as to the participation of any panel member in a lawsuit, to which Mr. Kidd replied that he was a named defendant in a suit then pending. Thereafter the judge admonished the prospective jurors to delve "inside" and ascertain whether they for any reason could not sit in fair and impartial

judgment, to which one individual responded that he owned a Browning shotgun. Judge Stagg's next query related to whether any person owned a shotgun; several potential jurors, other than Mr. Kidd, acknowledged ownership. The court's next question, pertaining to whether the potential jurors had a connection with or were insured by Liberty Mutual, was met with silence.

Finally, the court asked whether anyone had been injured by the discharge of a firearm. In the course of a side bar colloquy with the court, Kidd stated that he had been shot in the face at age 16 in a hunting accident, and that the experience had engendered no bias inasmuch as he remained an avid hunter. Kidd further discussed the nature of the action filed against him, indicating that he and eight other college students had "borrowed" a tractor during a nocturnal foray approximately three years ago, and were later sued for fire damage sustained by the vehicle. Counsel were then afforded an opportunity to present additional voir dire questions. Defense counsel offered none.

■ A review of defendants' motion for new trial on the ground of juror nondisclosure persuaded the court that facts sufficient to make out a *prima facie* case of impropriety had been averred therein, thus warranting an evidentiary hearing. *Vezina v. Theriot Marine Serv., Inc.,* 554 F.2d 654 (5th Cir.1977). Exercising the broad discretion accorded a trial court in tailoring "the investigation so as to minimize the harm likely to result from invading the sanctity of the jury room [in accordance with Fed.R.

Evid. 606(b)], while recognizing the need for an adequate hearing [on defendants' challenge] . . .", *Martinez v. Food City, Inc.,* 658 F.2d 369, 374 (5th Cir.1981), the court scheduled a hearing and personally conducted the interrogation of juror Kidd.[4]

At the hearing, the court's questions to Mr. Kidd were designed to elicit testimony as to whether he had misrepresented or intentionally concealed information during the voir dire examination. Mr. Kidd testified that at the time of trial he and his wife resided in a trailer approximately 100 yards from his father's home, and that he and his father shared a mailbox. He was 19 years old and living in a dormitory in early 1980 when the incident involving the tractor occurred, and had no insurance when suit was brought against him by the insurer of the vehicle. He was cognizant of the fact that his father was insured by Liberty Mutual, but was neither surprised nor angered when the latter informed him that his father's policy did not cover the damaged tractor. Mr. Kidd Sr. did not express anger or dissatisfaction to his son concerning Liberty Mutual's denial of coverage, stating only that he had anticipated that result. Kidd was not advised by his father that Liberty Mutual had declined to furnish a defense to the property damage suit. There was no conversation between Mr. Kidd and his fellow jurors on the subject of Liberty Mutual's connection with his father.

At defense counsel's request, the court inquired further as to juror Kidd's knowledge of the status of his father's insurance policies in advance of or during trial. The juror answered "none," remarking that he and his father did not discuss the latter's

---

4. The court's inquiry was tailored to conform to the strictures of Rule 606(b), which bars juror testimony, by affidavit or otherwise, "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or dissent from the verdict . . . or concerning his mental processes therewith," except that a juror may testify as to whether or not "extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was brought to bear on the juror."

Juror testimony concerning an individual juror's possible subjective prejudices or improper motives falls within the ambit of Rule 606(b). *Martinez v. Food City, Inc.* Hence the subjective thoughts and emotions that may have influenced a juror's deliberations are shielded from inquiry. *Carson v. Polley,* 689 F.2d 562 (5th Cir.1982). While "secret beliefs" having little relation to the law or facts may have prompted a juror to reach a particular verdict, such matters may not be exposed through post-verdict questioning by court or counsel. *Id.*

business affairs. It was not until after the verdict was rendered that Kidd learned of Liberty Mutual's cancellation of his father's auto insurance due to his sister's poor driving record.

Mr. Kidd Sr. was then summoned to the witness stand by defendants' attorney. In response to the defense counsel's questions, this witness essentially corroborated his son's account of a somewhat detached paternal relationship, characterized by a lack of communication respecting the father's business transactions, particularly with Liberty Mutual. Mr. Kidd Sr. denied either entertaining any feelings of ill-will toward Liberty Mutual by virtue of its cancellation of coverage, or conveying such feelings to his son prior to or during the course of trial. Father and son visited intermittently during trial, but did not discuss the merits of the case.

 Absent evidence of actual harm sustained by a litigant, a juror's failure to reveal information does not warrant a new trial. *Vezina v. Theriot Marine Serv., Inc.* In order to impeach a jury verdict on this ground, defendants must produce competent evidence of prejudice. *Martinez v. Food City, Inc.*

 The court is convinced that defendants have not discharged their burden of proving prejudice. Further, based on the testimony adduced at the hearing, the court is satisfied that Mr. Kidd was unaware of, and hence did not conceal, information probative of potential bias. What little knowledge he actually possessed with respect to his father's difficulties with Liberty Mutual did not influence his judgment, in either a positive or a negative sense. Because no concealment took place on voir dire, there was no need to question the remaining jurors. *Martinez v. Food City, Inc.* Accordingly, the court finds and concludes that the jury verdict was untainted by juror partiality or prejudice.

For the foregoing reasons, defendants' motions for judgment n.o.v., new trial or remittitur are DENIED.