**David C. ELLIS, next friend of Jacob Ray Ellis, Plaintiff-Appellee,**

v.

**K–LAN CO., INC., Defendant-Appellant.**

**No. 81–1614**

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Jan. 14, 1983.

Moser & Stubblefield, Lon Moser, Amarillo, Tex., for defendant-appellant.

Legg & Baskin, Reagan H. Legg, Midland, Tex., for plaintiff-appellee.

Before RUBIN, JOHNSON and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

This is an appeal in a diversity action from a judgment for damages rendered in favor of appellee against appellant for personal injuries sustained by appellee's two-year-old child when the child opened the cap on a container of acid-based drain declogger, spilled the contents on himself, and sustained chemical burns to his body. The primary questions are (1) whether the district court abused its discretion in allowing appellee's expert witness to testify as to his opinion respecting the defectiveness of the container cap, and (2) whether the district court erred in refusing to submit instructions to the jury regarding the alleged misconduct of the child's mother. We find no reversible error in the district court's rulings and affirm its judgment.

I.

On April 19, 1977, Mrs. Vera Ellis ("Mrs. Ellis"), a resident of Jal, New Mexico, purchased, among other things, a bottle of Master Plumber from the Thriftway Grocery Store in Kermit, Texas. Master Plumber is an acid-based drain declogger manufactured by appellant K-Lan Company, Inc. ("K-Lan") of Amarillo, Texas.

When Mrs. Ellis returned home from Kermit, she took her groceries, which were packed in four boxes, from her car to her kitchen table. Before she unloaded the groceries, her husband, appellee David Ellis ("Mr. Ellis"), called to tell her that her mother, a resident of Fort Worth, Texas, was seriously ill. Mrs. Ellis called the Fort Worth hospital where her mother was con-

fined, and learned that she had died. Mrs. Ellis and her two-year-old son, Jacob, then drove to her husband's place of employment, picked him up, and returned home.

After returning home, Mrs. Ellis went to her bedroom to pack for their trip to Fort Worth for her mother's funeral. Mr. Ellis began to unpack the groceries, which were still on the kitchen table. Jacob got on a chair beside the kitchen table to help his father unpack them. About that time, Mr. and Mrs. Ellis's relatives began calling them on the telephone. A telephone was located on the kitchen wall, about three- to five-feet from the kitchen table. While Mr. Ellis was talking on this telephone, Mrs. Ellis came back into the kitchen, where she saw Jacob on the floor with the capped bottle of Master Plumber in his hands walking toward her.[1] Mrs. Ellis told Jacob to put the Master Plumber back on the kitchen table and to leave it alone. Jacob did as he was told. Mrs. Ellis then returned to her bedroom to continue packing for their trip.

As Mr. Ellis was talking on the telephone, with his back to the kitchen table, he heard Jacob fall and hit the floor. Jacob was lying on the floor in a puddle of Master Plumber. The bottle of Master Plumber was also on the floor, lying on its side. The cap to the bottle, however, was still on the kitchen table. Mr. Ellis set the bottle upright, grabbed Jacob, and took him to the bathroom where he ran water over him. Mr. and Mrs. Ellis then took Jacob to the hospital where he was diagnosed as suffering from second- and third-degree chemical burns over his face, neck, arms, and legs, which were caused by the exposure of his skin to the Master Plumber.

Mr. Ellis, as next friend of Jacob, sued K-Lan in federal district court based on theories of strict liability, breach of warranty, and negligence.[2] The case, however, was submitted to the jury on a strict liability theory only. In response to special interrogatories, the jury found (1) that the container for the Master Plumber was defec-

tively designed; that the defective design was a producing cause of Jacob's injuries; (2) that the container cap was defectively manufactured; that this defect was a producing cause of Jacob's injuries; (3) that K-Lan failed to adequately warn the users of Master Plumber of the dangers associated with it; that this failure rendered the product defective; and that this defect was a producing cause of the injury. The jury awarded Jacob $24,500 for pain and suffering, and awarded Mr. Ellis $12,005.25 for past and future medical expenses for the treatment of Jacob's injuries. The district court rendered judgment on the jury's verdict.

## II.

K-Lan's first contention is that the district court erred in allowing appellee's expert witness to give his opinion regarding a defect in the container cap. K-Lan argues that the expert witness, Dr. Marshall Box, was disqualified from testifying because he was unfamiliar with the definition of "special packaging" contained in the Special Packaging of Household Substances for Protection of Children Act, 15 U.S.C. §§ 1471–76; 16 C.F.R. 1700.1, *et seq.*

The evidence shows that Dr. Box was a retired dean of occupational-technical education at Midland College. He had taught industrial safety and mechanical engineering for many years. Dr. Box testified that he was familiar with safety procedures and methods for containers, closures, and caps for different products. Dr. Box further testified that the container cap on the Master Plumber was defective, and that the warning on the container was inadequate. When asked, on *voir dire,* by K-Lan's counsel to give a definition of a child-proof cap, Dr. Box responded by saying, "I doubt if I could give you a definition. I can give you an idea of what I think the cap should be, but . . . ." K-Lan's counsel then made the following objection:

1. *See* note 7, *infra.*

2. The district court's jurisdiction was based on diversity of citizenship, and the case was tried under Texas law.

"My objection, Your Honor, is this: That the law defines the definition of a child-proof cap and this witness' testimony is an analogous situation to, if you had a real estate appraiser, he has to know the meaning of market value. He can't have his own meaning of market value, he has to know the meaning that the law says market value means.

"Now, I'm going to object to this witness' testimony about what he thinks a child-proof cap is, unless his definition is what the law says it is.

"That's what I'm saying, Your Honor, and I think that he ... unless he has a definition that coincides with the law, like market value coincides with what the law is, then we shouldn't hear his ideas about what something ... what a child-proof cap is that flies in the teeth of what the law is."

The district court overruled the objection.

On cross-examination, the following exchange took place between K-Lan's counsel and Dr. Box:

"Q. Do you think that the law requires something to be made completely safe for the child?

"A. I don't think it does. I believe it says for anything under ... anyone under five years old ... for a child under five years, it should be safe for those. I don't think it says completely safe.

"Q. Let me read you the definition from the law about that ...

"A. Okay.

"Q. ... and see if this agrees with your ... what you think it is. But you still don't have a definition yourself, do you?

"A. Well, that would be as close a definition as I would have, is safe for a child under five years old, if that's the kind of definition you wanted, Mr. Moser.

"Q. Well, let me read this to you and see if this coincides with your definition.

" 'The term "special packaging" means packaging that is designed or constructed to be significantly difficult for children under five years of age to open or obtain a toxic or harmful amount of the substance contained therein within a reasonable time, and not difficult for normal adults to use properly, but does not mean packaging which all such children cannot open or obtain a toxic or harmful amount within a reasonable amount of time.'

"Is that your definition?

"A. Well, it would be close, yes, sir, I believe."

This testimony shows that Dr. Box's definition of a child-proof cap corresponded somewhat with the definition of "special packaging" set forth in the statute. An expert witness, however, is not disqualified from testifying about the defectiveness of a product merely because he is unfamiliar with definitions or standards set by statutes or regulations that concern the product. Rule 702, Fed.R.Evid., provides that a witness who seeks to testify as an expert must first be found qualified as such "by knowledge, skill, experience, training, or education." The failure of the expert to be familiar with a statutory definition or standard affects his credibility, not his qualifications to testify. *Cf. N.V. Maatschappij Voor Industriele Waarden v. A.O. Smith Corp.*, 590 F.2d 415, 419 (2d Cir.1978) (" ... proper focus of expert testimony is technical, rather than legal ... "). By cross-examination, K-Lan's counsel exposed Dr. Box's unfamiliarity with the "special packaging" statute to the jury. The jury, however, chose to believe his testimony over that of K-Lan's expert witness, who testified that the product was not defective.

■ Moreover, whether or not K-Lan was in compliance with the "special packaging" statute or with the other federal safety statutes referred to by K-Lan's president in his testimony,[3] while plainly relevant, would not have been conclusive of its product's defectiveness or its fitness.[4] *Bristol-*

---

**3.** K-Lan's president testified that the container and cap used for Master Plumber complied with the Consumer Product Safety Act, 15 U.S.C. § 2051 *et seq.*, and the Federal Hazardous Substance Act, 15 U.S.C. § 1261 *et seq.*

**4.** Under some recent products liability statutes,

*Myers Co. v. Gonzales,* 548 S.W.2d 416, 423 (Tex.Civ.App.—Corpus Christi 1976), *rev'd on other grounds,* 561 S.W.2d 801, 804 (Tex. 1978); *Rumsey v. Freeway Manor Minimax,* 423 S.W.2d 387, 394 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ); *Simien v. S.S. Kresge Company,* 566 F.2d 551, 557 (5th Cir.1978); *Howard v. McCrory Corp.,* 601 F.2d 133, 138 (4th Cir.1979); *Poches v. J.J. Newberry Company,* 549 F.2d 1166, 1168 (8th Cir.1977); 1 Frumer & Friedman, *Products Liability* § 5.04; 2 Frumer & Friedman, § 16A[4][i].[5]

■ Mindful of the very wide discretion a district court possesses in determining the qualifications of an expert witness, we find no abuse of discretion here. *Robert v. Conti Carriers & Terminals, Inc.,* 692 F.2d 22, 26 n. 8 (5th Cir.1982); *Page v. Barko Hydraulics,* 673 F.2d 134, 139 (5th Cir.1982); *Dunn v. Sears, Roebuck & Co.,* 639 F.2d 1171, 1174 (5th Cir.), *modified,* 645 F.2d 511 (1981).

### III.

■ K-Lan's next contention is that the district court erred in submitting to the jury the causal relationship of the product's defect to the resulting harm under a producing cause, rather than a proximate cause, standard.[6] K-Lan argues that the plaintiff in a strict liability case must establish that the defective condition proximately caused his injuries or damage. We disagree. Under Texas law, no showing of proximate causation is required. *Helicoid Gage Division of American Chain & Cable Company v. Howell,* 511 S.W.2d 573, 575 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). "The defect of the supplier's product need be only the *producing* cause of the harm for the supplier to be held liable." *General Motors Corp. v. Hopkins,* 548 S.W.2d 344, 351 (Tex.1977). *See generally Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1280–81 (5th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974).

■ K-Lan also complains of the failure of the district court to submit instructions to the jury respecting Mrs. Ellis's alleged contributory negligence and misuse of the product in allowing Jacob to have the Master Plumber in his possession.[7] In addition, K-Lan argues that the court erred in failing to submit instructions on compara-

---

compliance with federal or state statutes or regulations raises a rebuttable presumption that the product is not in an unreasonable condition respecting the matters covered by those statutes or regulations. *See* Tennessee Code Annot. sec. 23–3704. Neither the federal statutes involved in this case nor any Texas law sets up such a presumption. Nor are we dealing here with a statute or regulation which mandates the use of a specific variety or form of device or warning, to the exclusion of any other or additional devices or warnings for the same purpose, as opposed to merely setting minimum standards or requirements. K-Lan does not contend that the statutes here in question do more than provide minimum standards. *See note 5, infra.*

5. In its charge, the district court submitted to the jury the statutory definition of "special packaging" and it also gave them the following instruction:

"You are instructed that evidence of compliance by the Defendant with any industry, federal or state minimum standards, regulations or recommendations does not, standing alone, mean its product is not an unreasonably dangerous product. Evidence of such compliance or of non-compliance, as the facts may be found by you, is to be con-

sidered and given the same weight as any other evidence in the case, or may be disregarded by you in its entirety."

K-Lan made no objection to the submission of this instruction.

6. In its brief, K-Lan asserts that it objected to the district court's submission of the "issues" under a producing cause standard. This standard was submitted in connection with Special Issues Nos. 1, 2, and 3, but K-Lan objected to this submission only in regard to Special Issue No. 3. *See note 7, infra.*

7. Because Jacob was only two years old when the accident happened, he was, under Texas law, so young as to be incapable of negligence. *See Yarborough v. Berner,* 467 S.W.2d 188, 190 (Tex.1971). In Texas, the contributory negligence of the child's parents is not imputed to the child so as to bar the child's cause of action for personal injuries. *Lowery v. Berry,* 153 Tex. 411, 269 S.W.2d 795, 797 (1954); *Thacker v. J.C. Penney Co.,* 254 F.2d 672, 679 (5th Cir.1958), *cert. denied,* 358 U.S. 820, 79 S.Ct. 31, 3 L.Ed.2d 61 (1959). A parent's recovery of medical expenses incurred on behalf of a child, however, may be reduced or defeated by the parent's own contributory negligence. *Head v. Coleman,* 470 S.W.2d 380 (Tex.Civ.App.—

tive causation, *see Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 750 (Tex. 1980) (Pope, J., concurring), and on superseding causation. The record, however, fails to show that K-Lan requested any instructions on these matters.[8] "A party cannot complain of the denial of requested instructions where the requests do not ap-

Waco 1971, writ ref'd n.r.e.). Where such recovery is the community property of the parents, the negligence of one parent would presumably be imputed to the other. *See Mitchell v. Akers,* 401 S.W.2d 907, 909 (Tex.Civ.App.— Dallas 1966, writ ref'd n.r.e.); *Folsom Inv., Inc. v. Troutz,* 632 S.W.2d 872, 875–76 (Tex.Civ. App.—Fort Worth 1982, no writ).

Under Texas law traditional contributory negligence, *i.e.,* failure to discover the defect in the product or to guard against the possibility of its existence, is not a defense in a strict liability case. *See Gaudiano v. Fleishman,* 636 S.W.2d 785, 787 (Tex.Civ.App.—San Antonio 1982, no writ); *Helicoid Gage Div. of Am. Chain & Cable Co. v. Howell,* 511 S.W.2d 573, 575 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.); *Shamrock Fuel & Oil Sales Co. v. Tunks,* 416 S.W.2d 779, 783 (Tex.1967).

Assumption of risk, in the sense of voluntary exposure to the risk posed by a defective product with knowledge and appreciation of the danger, may be a complete defense in strict liability actions. *See Henderson v. Ford Motor Co.,* 519 S.W.2d 87, 90–92 (Tex.1974); *General Motors Corp. v. Hopkins,* 548 S.W.2d 344, 351 (Tex.1977); *Rourke v. Garza,* 530 S.W.2d 794, 800 (Tex.1975). *Cf. Farley v. MM Cattle Co.,* 529 S.W.2d 751, 758 (Tex.1975) (assumption of risk abolished in negligence actions). K-Lan did not plead assumption of risk, nor does it assert that there was any evidence to support an assumption of risk submission.

Misuse of the product may, under certain circumstances, serve to proportionately reduce the otherwise recoverable damages in a strict liability action. *Hopkins,* 548 S.W.2d at 351–52.

There is no evidence that Mrs. Ellis misused the product. On cross-examination, however, K-Lan's counsel introduced into evidence, without objection, the following written statement made by Mrs. Ellis, about three years before trial: "He [Jacob] got the bottle of Master Plumber and took the cap off. When I saw him do this, I told him to put it back. He put the bottle of Master Plumber back on the table. The bottle somehow fell off." During the trial, however, Mrs. Ellis repeatedly denied seeing Jacob take the cap off the bottle.

Assuming that the prior statement constituted substantive evidence of contributory negligence on Mrs. Ellis's part, under the holding of *Henderson v. Ford Motor Co.,* 519 S.W.2d at 90, her negligence would not be a complete defense to the claim for medical expenses in a strict liability action. In *Henderson,* plaintiff sued Ford for injuries sustained when her car malfunctioned in such a way as to cause the car to accelerate without the accelerator pedal being depressed; to avoid a collision with other cars or pedestrians, she drove the car into a signal light pole. Ford claimed that Henderson was contributorily negligent in failing to respond to the situation created by the defect with due care and that her misconduct was a defense. The Supreme Court of Texas, however, rejected this argument:

"This Court in 1967 left open the question of whether contributory negligence would be a defense if the subpar conduct of the user followed discovery of the defect. We now hold that contributory negligence is not a defense under those circumstances in a strict liability action." 519 S.W.2d at 89–90.

For the reasons stated in the text *infra* and notes 8 and 9, *infra,* we do not determine whether the possible negligence of Mrs. Ellis, as reflected in her pretrial statement, should have been submitted to the jury under a comparative causation format as a basis for reduction of the recovery for medical expenses. *See Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 750–51 (Tex.1980) (Pope, J., concurring). Hence, we need not decide whether such a submission would entail an impermissible modification by us of *Henderson. See Rhynes v. Bramick Mfg. Corp.,* 629 F.2d 409, 410 (5th Cir.1980). And, because Mrs. Ellis's assertedly subpar conduct consisted of a failure to adequately respond to the dangerous situation which the defect had already brought about, just as did the conduct of the plaintiff in *Henderson,* we likewise need not determine the applicability of *Henderson,* at least insofar as it may prevent reduction of strict liability damages on account of contributory fault, to instances of negligent conduct (other than failure to discover or guard against the existence of an unknown defect) which, *independently* of the defect, operates to create a dangerous situation and is, along with the defect, a concurring proximate cause of the injury or accident. *See e.g., Edwards v. Sears, Roebuck & Co.,* 512 F.2d 276, 290 (5th Cir.1975); *Murray v. Fairbanks Morse,* 610 F.2d 149, 161–63 (3d Cir. 1979).

8. In its brief, counsel for K-Lan asserts that requested issues regarding the mother's contributory negligence and misuse, comparative causation, and superseding causation, were tendered to the district court and refused. The brief also states that these requests are in the file of the clerk. The record, however, shows that counsel for K-Lan made only the following objections to the charge:

"MR. MOSER: Comes now the Defendant and objects and excepts to the charge as drafted in the following particulars:

pear in the record." 9 Wright & Miller, *Federal Practice and Procedure: Civil,* § 2558, at 675 (1981); *Campbell v. Clark,* 283 F.2d 766, 771 (10th Cir.1960). Moreover, the record also fails to show that K-Lan objected to the district court's failure to include such instructions in its charge.[9] Fed.R.Civ.P. 51.

The district court's judgment is affirmed.

AFFIRMED.

"As to that special issue which begins ...

"THE COURT: Let's number them.

"MR. MOSER: As to special issue number two, as submitted, because the evidence shows that the Defendant did not manufacture the cap and furthermore, that the submission of special issue number two is cumulative of special issue number one and, in effect, gives the Plaintiff two opportunities for a favorable answer, instead of one.

"Furthermore, Defendant objects to special issue number three, insofar as it.requires the test to be a producing cause, rather than a proximate cause, and because of its failure to use the proximate cause test, the Defendant is deprived of a charge on the mother of the Plaintiff's contributory negligence.

"Respectfully submitted.

"THE COURT: Overruled."

The docket sheet shows that the clerk received plaintiff's·requested instructions. No mention, however, is made on the docket sheet. of receiving any such requests from K-Lan.

**9.** The objection made by K-Lan regarding submission under a producing cause standard (*see* note 8, *supra*) was properly overruled by the district court. The producing cause standard is proper in a products liability case under Texas law, and the use of that standard did not prevent K-Lan from requesting instructions on Mrs. Ellis's contributory negligence and misuse. Nor did it prevent K-Lan from requesting a submission on a comparative causation or a superseding causation theory. The objection made was therefore insufficient to preserve 'for review the failure of the district court to submit instructions on these matters. Even if proper request and objection had been made, there would have been no reversible error in failing to submit misuse by Mrs. Ellis as there was no evidence of such misuse, nor in failing to submit contributory negligence on Mrs. Ellis's part as a complete defense to the cause of action for medical expenses, as the type of negligence arguably shown is not such a defense. *See* note 7, *supra.* We express no opinion on the propriety of a comparative causation or a superseding causation submission based on Mrs. Ellis's alleged contributory negligence.