David SIMS, Appellant,

v.

WASHEX MACHINERY
CORPORATION,
Appellee.

No. 01–91–01391–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 12, 1995.

Rehearing Overruled Sept. 19, 1996.

Jeffrey L. Hoffman, Houston, for Appellant.

A. David Carlson, Deanna D. Smith, Houston, for Appellee.

Before OLIVER–PARROTT, C.J., and WILSON and O'CONNOR, JJ.

## OPINION

WILSON, Justice.

Appellant appeals from the trial court's take-nothing judgment based on a jury verdict in a product liability suit. We affirm in part, and reverse and remand in part.

Appellant, David Sims, was injured when he attempted to repair a commercial washing machine owned by Dapper Dan Cleaners and manufactured by appellee, Washex Machinery Corporation (Washex). Sims, an employee of Dapper Dan Cleaners, responded to a report by another employee that a washing machine made a noise when it operated at high speeds.

To begin the repair effort, Sims removed the safety panel from the back of the machine, and turned the power on. He placed his hand on the top edge of the back of the machine approximately one and one-half inches from a now exposed belt and pulley system located just inside the machine. He was injured when his hand somehow became entangled in the belt and pulley system.

Sims sued Washex for personal injuries under theories of negligence and strict products liability including marketing and design defect, breach of implied warranty of fitness for a particular purpose, and breach of implied warranty of merchantability. The case was submitted to the jury on theories of negligence, design defect and fitness for ordinary purpose. The jury found against Sims on the theories submitted, and also found that his own negligence was the sole proximate cause of his injury. On appeal, Sims presents 11 points of error.

### The charge

Sims complains in his first point of error that the trial court erred in refusing to submit a jury question on marketing defect; and he complains in his tenth point of error the court erred in refusing to submit an issue on gross negligence. A party is entitled to a jury instruction if the issue is raised by the pleadings and the evidence. TEX.R.CIV.P. 278. When evaluating whether a party is entitled to a jury instruction, we examine the record for evidence supporting the submission of the question, and ignore evidence to the contrary. *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992). Refusal by a judge to submit a question is correct only if no evidence exists to warrant the submission of the question. *Id.*

### 1. Marketing defect

A "defective product" is a product that is unreasonably dangerous to the user or consumer. RESTATEMENT OF TORTS (SECOND) § 402A(1); *Borel v. Fibreboard Paper Prod. Corp.,* 493 F.2d 1076, 1087 (5th Cir.1973). A plaintiff may prove a product "defective" if it is (1) unreasonably dangerous as manufactured, (2) unreasonably dangerous as de-

signed, or (3) unreasonably dangerous because adequate warnings or instructions were not provided. *Joseph E. Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385, 387 (Tex.1991); *Lucas v. Texas Indus., Inc.,* 696 S.W.2d 372, 377 (Tex.1984).

A manufacturing defect exists when a product does not conform to the design standards and blueprints of the manufacturer and the flaw makes the product more dangerous and therefore unfit for its intended or reasonably foreseeable uses. *USX Corp. v. Salinas,* 818 S.W.2d 473, 482 n. 8 (Tex. App.—San Antonio 1991, writ denied). A product with a design defect complies with all design specifications, but the design configuration is unreasonably dangerous in that the risks of harm associated with its intended and reasonably foreseeable uses outweigh its utility. *Id.* In contrast, a marketing defect occurs when a defendant knows or should know of a potential risk of harm presented by a product but markets it without adequately warning of the danger or providing instructions for safe use. *Id.* at 482.

A product need not be proven defective in all three ways in order to sustain a finding of strict liability. *Thiele v. Chick,* 631 S.W.2d 526, 530 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.); *Helicoid Gage Div. of Am. Chain & Cable Co. v. Howell,* 511 S.W.2d 573, 575 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). Even a product which is safely designed and manufactured may be unreasonably dangerous as marketed because of a lack of adequate warnings or instructions. *McGuire,* 814 S.W.2d at 387; *Malek v. Miller Brewing Co.,* 749 S.W.2d 521, 522 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Under a marketing defect theory, it is the absence of a warning that makes use of the product unreasonably dangerous. *Blackwell Burner Co., Inc. v. Cerda,* 644 S.W.2d 512, 516 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.).

To establish a theory of recovery based on marketing defect, a claimant must prove the following:

1. a risk of harm is inherent in the product or may arise from the intended or reasonably anticipated use of the product;

2. the product supplier actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed;

3. the product contains a marketing defect;

4. the absence of a warning and/or instructions renders the product unreasonably dangerous to the ultimate user or consumer of the product; and

5. the failure to warn and/or instruct must constitute a causative nexus in the product user's injury.

*Salinas,* 818 S.W.2d at 483; *see also Williams v. Southern Pac. Transp. Co.,* 804 S.W.2d 132, 138–39 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

The instruction book accompanying the machine states that it is necessary to remove the back panel of the washing machine while the machine is in use to see whether the machine is operating properly. The testimony in the record reflects no guard protects repairmen from the pulley mechanism of the machine once they remove the back panel, as is required to perform some routine maintenance functions. According to the record, the pulley mechanism is located approximately one and one-half inches from the edge of the machine. There was also testimony that the machines are commonly placed close to the wall, creating a very small working space. In fact, the evidence at trial indicated this machine was placed approximately 18 inches from the wall. Sims also testified that this particular machine was more difficult to work on than other machines due to the layout of the parts. This is some evidence that there is a risk of harm from the reasonably anticipated use and maintenance of the washing machine.

A plaintiff may prove knowledge or foreseeability of danger in several ways, including presentation of post-accident warnings and evidence of governmental standards. *Salinas,* 818 S.W.2d at 484. Robert Hubbard, a Washex engineer, testified that the back panel is the only guard covering the hazardous pulley mechanism, and this panel

on the machine complied with OSHA guard requirements. There is also testimony that warnings were later placed on other washing machines warning against injury from the pulley mechanism. This testimony amounts to some evidence that Washex knew or should have known that a risk of injury existed.

David Sibert, the manager of the dry cleaners where the accident occurred, testified that there was only one and one-half inches between the pulley system and the edge of the machine, and that this posed an unreasonable risk. Robert Hubbard, an engineer with Washex, testified that the pulley system, without the back cover in place is hazardous.[1] Bruce Pinkston, an engineer and expert witness for Washex, testified that there should be a warning on the machine about the belts and pulley system; however, in his opinion the absence of the warning does not make the product defective. From this evidence, the jury could have weighed the utility of the machine against the risk of harm from its lack of warnings. This testimony is some evidence that a marketing defect existed and that the washing machine, without warnings, was unreasonably dangerous.

Sims testified he would not have placed his hand near the back of the machine had Washex warned him of the danger.

Q.: And looking back, if there had been a warning on the machine that you could lose your hand or your fingers or your thumb, what would you have done with this machine when you were told to go back there and fix it?

A.: If I was told to fix it and do what I did, you know, service it or try to check it with

it running, I just don't know, not if I had known this or it could even be this bad.

This testimony raises the issue of producing cause of the injury.[2]

Sims was denied submission of the marketing defect theory of recovery to the jury, an issue which a review of the record indicates was in fact raised by the pleadings and upon which more than a scintilla of evidence was presented. The record reflects that Sims timely requested a question on marketing defect in substantially correct wording, and this request was marked "denied" by the trial court. Tex.R.App.P. 52(a). In addition, "[s]o long as matters are timely raised and properly requested as part of a court's charge, a judgment cannot be permitted to stand when a party is denied proper submission of a valid theory of recovery ... raised by the pleadings and the evidence." *Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex. 1992).

Because Sims has presented more than a scintilla of evidence supporting each element of a marketing defect theory of recovery, we sustain his first point of error.

■■■■ Washex urges that if we sustain this point of error, we should reverse and remand only on the issue of marketing defect, and let the remainder of the judgment stand. Rule 81(b)(1) of the Texas Rules of Appellate procedure states:

[I]f it appears to the court that the error affects a part only of the matter in controversy and that such part is clearly separable without unfairness to the parties, the judgment shall only be reversed and a new trial ordered as to that part affected by such error. . . .

1. The testimony of Sibert and Hubbard does not directly address warnings, but instead is probative on the issue of the existence of a danger which would require a warning.

2. Sims testified that he had worked on the machine before, and he knew the danger of placing his hand in the back of an operating washing machine after the safety panel had been removed.

Q.: So, on a washing machine, a commercial washing machine you know is dangerous, you told us when you removed the guard you know

there's that potential for danger, and you know you need to be extra careful.

A.: Yes, ma'am.

Washex argues this evidence establishes that its failure to warn was not a producing cause of the accident. *See Blackwell Burner Co.*, 644 S.W.2d at 516 (if party to be warned is aware of potential danger, or if the user of a product had knowledge of the danger, the manufacturer's failure to warn is not a producing cause of the accident). However, we review the evidence in the light favoring the submission of the issue, and therefore do not consider this evidence. *Elbaor*, 845 S.W.2d at 243.

In this case, we find that the part of the matter in controversy concerning marketing defect is separable from the issue of design defect. Accordingly, we consider Sims's remaining points of error to determine whether the remainder of the judgment may be affirmed.

### 2. Gross negligence

To recover for gross negligence, a party must prove that the defendant was consciously or knowingly indifferent to the rights, welfare, and safety of others. We review the record to determine if any evidence raises the issue of gross negligence warranting submission of the issue to the jury. *Elbaor*, 845 S.W.2d at 243.

Sims directs our attention to the testimony of Robert Hubbard, who testified that Washex did not provide a guard on the belt and pulley, and never considered doing so because in their opinion, an additional guard was not necessary. This evidence does not raise a fact issue that Washex was knowingly or consciously indifferent to the safety of others. The trial court therefore properly refused an instruction on gross negligence. We overrule Sims' tenth point of error.

Sims complains in his eleventh point of error that the court erred in failing to submit a question on exemplary damages. However, the issue of exemplary damages is considered only if the jury answers the question on gross negligence affirmatively. In the absence of liability, the issue of damages is immaterial. *Turner v. Lone Star Indus., Inc.*, 733 S.W.2d 242, 246 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). We have held that the trial court properly refused an instruction on gross negligence, therefore it would not have been proper for the jury to consider the issue of exemplary damages. Accordingly, we overrule Sims' eleventh point of error.

### Plaintiff's negligence

Sims' second, third and ninth points of error assert there is no evidence to support the submission of, and the jury's answers to, the questions regarding his negligence and the relative percentage of causation between Sims and Washex.

In determining whether a party is entitled to a jury instruction, we must examine the record for evidence supporting the submission of the question, and ignore all evidence to the contrary. *Elbaor*, 845 S.W.2d at 243. A trial court's refusal to submit a question is correct only if no evidence supports the submission of the question. *Id.*

Sims argues the trial court erred in submitting the issue of his negligence because the evidence shows his conduct was not negligent, but amounted to a failure to discover or guard against a product defect. The negligent failure to discover or guard against a product defect is not a defense against strict liability. *Keen v. Ashot Ashkelon, Ltd.*, 748 S.W.2d 91, 92–93 (Tex.1988).[3]

Washex's defensive theory is that Sims voluntarily encountered a known danger, which is a defense to a strict liability claim. *Keen*, 748 S.W.2d at 92–93. Based on Sims' testimony that he knew the danger of placing his hand in the back of an operating washing machine, the jury could reasonably have found that Sims negligently encountered a known danger, and that this conduct was the sole cause of the accident. *See Williams*, 804 S.W.2d at 138–140.

Sims's second, third, and ninth points of error are overruled.

### Sufficiency of the evidence

Sims challenges the jury's findings that there was no design defect, that the machine was not unfit for the ordinary purposes for which such products are used, and that Washex was not negligent. In evaluating challenges to the sufficiency of the evidence, we consider all the evidence, both for and against the verdict. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986); *Glockzin v. Rhea*, 760 S.W.2d 665, 666 (Tex.

---

3. However, the trial court also submitted the issue of Washex's negligence, and Sims cites no authority that his negligence would not have been a defense to Washex's negligence had the jury found Washex negligent. Tex.R.App.P. 74(f); *see also Williams*, 804 S.W.2d at 140 (in a products liability case, there was no error to submit the issue of plaintiff's negligence where plaintiff also pled a theory of products liability based on negligence).

App.—Houston [1st Dist.] 1988, writ denied). The *judgment* will be set aside only if the evidence is so weak or against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

### 1. Design defect

 The evidence at trial showed that the back panel guard on the washing machine complied with OSHA regulations for safety devices. Testimony indicated that even with the back safety guard removed for repairs, the machine complied with OSHA regulations for repairmen. Compliance with government regulations is strong evidence, although not conclusive, that a machine was not defectively designed. *Lorenz v. Celotex Corp.,* 896 F.2d 148, 150–51 (5th Cir.1990); *Ellis v. K–Lan Co.,* 695 F.2d 157, 161–62 n. 4 (5th Cir.1983).

There was testimony that the pulley mechanism was too close to the edge of the machine. There was also testimony that the back panel of the machine must be removed to diagnose the need for repairs, and in some instances, the machine must be in operation with the back panel off. Sims offered testimony from an engineer that an additional guard, other than the back panel, would be feasible. Two types of guard suggested were a guard covering the pulley mechanism, and a back panel made of expanded metal. However, Washex presented evidence that a guard covering the pulley mechanism would not be feasible because it would be destroyed during the operation of the machine. Washex also presented evidence that a back cover made of expanded metal would not allow a repairman to view the interior of the machine with the panel on because the holes in the panel would be too small to allow viewing of the mechanisms while in operation.

Based on this evidence, a jury could have reasonably found that the machine was not defectively designed. We overrule Sims's sixth point of error.

### 2. Unfit for ordinary purposes

 Sims argues in his seventh point of error the jury's finding that the machine was not unfit for its ordinary purposes was against the great weight and preponderance of the evidence. Sims argues that the foreseeable maintenance of the machine exposes the repair person to an unreasonable risk of harm. In addition to the evidence summarized above, evidence was presented that the risk of harm from the pulley mechanism was obvious, and that a repairman, possessing the specialized knowledge that comes with that position, would appreciate such a risk. There was also testimony that only a repairman would remove the back cover of the machine and expose the pulley system. Based on this evidence, a jury could have reasonably found the machine not to be unfit for the ordinary purposes for which the machine is used. We therefore overrule Sims' seventh point of error.

### 3. Negligence

 Sims argues the jury's finding that Washex was not negligent was against the great weight and preponderance of the evidence. In examining this point of error, we focus on the conduct of the manufacturer rather than any defect in the product. *Gonzales v. Caterpillar Tractor Co.,* 571 S.W.2d 867, 871 (Tex.1978). However, much of the evidence already noted in support of the finding of no design defect also supports the finding of no negligence, as the conduct of the manufacturer is examined leading to the condition of the product. Additionally, Robert Hubbard testified Washex never considered placing another guard on the pulley system, because they believed one was not necessary. After reviewing all of the evidence summarized above, we conclude that the finding of no negligence on the part of Washex was not against the great weight and preponderance of the evidence, and we overrule Sims' eighth point of error.

### Damages

Sims argues in his fourth and fifth points of error that the jury finding of no damages is not supported by conclusive evidence, or alternatively that damages were established by the great weight and preponderance of the evidence. However, the jury found no liability as well as no damages. In the ab-

sence of liability, the issue of damages is immaterial. *Turner*, 733 S.W.2d at 246. Accordingly, we overrule Sims's fourth and fifth points of error.

We reverse the judgment and remand for a new trial on the issues of marketing defect, Sims's negligence, and damages. The issue of Sims's negligence must be submitted to determine Sims's responsibility, if any, for the occurrence.[4]

Finding no other reversible error, we affirm the remainder of the judgment.

---

4. If Sims is 60 percent or more responsible, Sims may not recover damages. Tex.Civ.Prac. & Rem. Code Ann. § 33.001(b) (Vernon Supp.1995).