Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB









Opinion issued January 26,
2006






 

 

 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-04-00982-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



XAVIER BENAVIDES, Appellant

 

V.

 

CUSHMAN, INC., Appellee

 

 



On Appeal from the 280th District Court

Harris County, Texas

Trial Court Cause No. 2002-29056

 








 

 



O P I N I O N

          

          In
his appeal of this product liability case, Xavier Benavides asks that we
reverse a judgment on a jury verdict in favor of appellee, Cushman, Inc.  Benavides, a golf course groundskeeper, sued
Cushman for injuries he sustained when a sand trap rake—a three-wheeled vehicle
manufactured by Cushman—overturned while he was driving it.  On appeal, Benavides contends the trial court
erred in (1) excluding evidence of prior similar incidents, (2) excluding
expert testimony regarding failure to warn, (3) admitting cumulative expert
testimony, and (4) admitting an incident report written by Benavides’s
supervisor at the golf course.  We
conclude that none of the trial court’s evidentiary rulings warrant reversal
and therefore affirm.

I.  FACTS

          Benavides
worked at the Battle Ground Golf Course in Deer Park, Texas.  In June 2000, Benavides’s supervisor
instructed him to groom the course’s sand traps with Cushman’s Groom Master
sand trap rake.  As Benavides exited a
sand trap on the eleventh hole, he noticed a furrow in the sand.  Although Benavides was heading downhill, he
attempted to reverse course so as to re-enter the trap and smooth the furrow.  As he began to turn, the left wheel of the
Groom Master kicked upward.  Benavides
attempted to jump from the machine before it overturned but was unsuccessful.  After the impact, he scooted out from
underneath the Groom Master and walked to the twelfth hole to seek medical
assistance.  Benavides subsequently
underwent two surgeries for injuries to his neck and lower back.

II.  PROCEDURAL HISTORY

          Benavides
brought claims against Cushman for design defect, manufacturing defect, and
negligence.  The case initially proceeded
to trial in November 2003.  Due to
Cushman’s violation of a motion in limine, however, the trial court granted
Benavides’s motion for a new trial.  The
jury in the second trial found that the Groom Master did not have a design
defect, that Cushman was not negligent, and that Benavides was one hundred
percent responsible for the accident.[1]  This appeal followed.

III.  ANALYSIS

A.  Standard of Review

          The
admission and exclusion of evidence is committed to the trial court’s sound
discretion.  City of Brownsville v.
Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). 
To obtain reversal of a judgment based on error in the admission or
exclusion of evidence, an appellant must show that the trial court’s ruling was
erroneous and that the error was calculated to cause, and probably did cause,
“rendition of an improper judgment.”  Tex. R. App. P. 44.1(a)(1); Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).  In making this determination, we review the
entire record.  Alvarado, 897
S.W.2d at 754.  Reversible error does not
usually occur in connection with evidentiary rulings unless the appellant can
demonstrate that the whole case turns on the particular evidence admitted or
excluded.  Id. at 753–54; GT
& MC, Inc. v. Tex. City Ref., Inc., 822 S.W.2d 252, 257 (Tex.
App.—Houston [1st Dist.] 1991, writ denied).

B.  Prior Similar Incidents

          In
his first issue, Benavides contends the trial court abused its discretion in
excluding evidence of earlier similar incidents.  Specifically, Benavides proffered his expert
witness, Dr. Robert Wright, to testify about five rollover accidents involving
the Truckster, a different three-wheeled turf vehicle, also manufactured by
Cushman.  In the first trial, the court
granted Cushman’s motion in limine prohibiting Benavides from introducing
evidence regarding the Truckster rollover accidents.  At the second trial, Benavides asked the trial
court to revisit its ruling on the motion in limine, but it declined to do so.  Benavides made an offer of proof through Dr.
Wright, who testified that the prior Truckster incidents were similar because
Cushman designed both vehicles for golf courses and the Truckster has a similarly
high center of gravity when loaded.  The
trial court rejected Benavides’s offer of proof and refused to allow Dr. Wright
to testify about previous Truckster rollover accidents during Benavides’s
case-in-chief.

          During
Cushman’s case-in-chief, however, Benavides introduced this evidence.  While cross-examining Cushman’s expert
witness, Ralph Barnett, he covered the other incidents extensively.  For example:

Q.      [Benavides’s
counsel]:     Okay.  Let me hand you what we’ve marked for
identification as Plaintiff’s Exhibit 241.

 

A.      [Barnett]:     Yes.

 

Q.      This is a
lawsuit by a gentleman named Jimmy T. Dickerson, correct?

 

A.      Yes.

 

Q.      And in
this incident on May 11, 1993, the Plaintiff Dickerson and Hutton were
operating a Cushman three-wheeled turf Truckster, correct?

 

A.      Yes.

 

Q.      And they
were operating it on a slope at an army post, correct?

 

A.      Yes.

 

Q.      And they
were traveling about two miles per hour --

 

A.      Yes.

 

Q.      -- along
the right of way of --

 

A.      Yes.

 

Q.      -- Road,
correct?

 

. . . .

 

Q.      And then
the subject vehicle hit a small indentation about the size of a pie plate and
approximately one to two inches deep and it caused the truck to overturn,
correct?

 

A.      That’s
what it says under Statement of Facts.

 

Q.      Yes.  And then the allegations that were made were
that the three-wheel Truckster was unstable and unfit for its intended use,
correct?

 

A.      Yes.

 

Q.      And they
also claim that it lacked rollover protection systems, correct?

 

A.      Correct.

 

Q.      And the
rollover protection systems included the lack of a seat belt, correct?

 

A.      Yes,
because if it’s a system, it will be also a lack of seat belt [sic].

 

Q.      And that
was May 11th, 1993, correct?

 

A.      Yes.

 

Benavides’s counsel read petitions or
incident reports discussing each of the other Truckster incidents to the jury
and asked Barnett to comment.  After this
evidence, the trial court admitted as an exhibit a list of the dates of the
Truckster rollover accidents and the names of the individuals involved.  The exhibit also notes that, in two of the
incidents, the involved driver died.

          In
his brief, Benavides acknowledges that the trial court admitted evidence concerning
the prior similar incidents but asserts that he “was denied the ability to
effectively prosecute his case by introducing the incidents through his own
expert.”  After the trial court allowed
the evidence, however, Benavides did not seek to recall Dr. Wright to discuss
the Truckster rollover accidents.  Instead,
Benavides rested at the conclusion of Cushman’s case-in-chief.

          Given
that the jury heard extensive evidence concerning the other incidents, we hold
that Benavides could not be harmed by error, if any, in the trial court’s
ruling earlier in the trial excluding Dr. Wright’s testimony.  See Bryant v. Transcon. Gas Pipe Line
Corp., 821 S.W.2d 187, 188–89 (Tex. App.—Houston [14th Dist.] 1991, writ
denied) (holding that any error in excluding certain admissions was harmless
where “[t]he bulk of the excluded evidence was before the jury through
[another] exhibit” and other statements admitted into evidence “relate[d] the
same information” as was contained in excluded admissions); Monsanto Co. v.
A.A. Pruitt, 571 S.W.2d 561, 562–63 (Tex. Civ. App.—Houston [14th Dist.]
1978, no writ) (holding that trial court’s ruling on motion in limine excluding
portions of contract relating to insurance was harmless where entire contract
was later admitted into evidence); see also Stergiou v. Gen. Metal
Fabricating Corp., 123 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 2003,
pet. denied) (where two timelines were essentially identical, holding that any
error in excluding appellant’s timeline was harmless because appellant did not
show how excluded timeline substantially differed from properly admitted one); Wilson
v. John Frantz Co., 723 S.W.2d 189, 194 (Tex. App.—Houston [14th Dist.]
1986, writ ref’d n.r.e.) (“If there was any error in excluding the evidence
proffered by the appellee, the error was harmless because other evidence that
was admitted revealed the [same] facts . . . .”).  Moreover, Benavides did not seek to recall
Dr. Wright after the trial court’s reversal of its previous ruling, and thus
cannot support his contention that the trial court denied him the ability to
prosecute his case. [2]

C.  Failure to Warn

          In
his second issue, Benavides contends the trial court abused its discretion in
refusing to allow testimony by Dr. Wright pertaining to Cushman’s failure to
warn of the Groom Master’s propensity to roll over, if turned on an incline.  Benavides made an offer of proof in which Dr.
Wright testified that Cushman should have placed a warning on the Groom Master
that turning it while on an incline could cause the vehicle to roll over.  The trial court excluded Dr. Wright’s
testimony on the ground that Benavides had pleaded a “design defect”—and not a “failure
to warn.”  Benavides asserts that the
trial court’s “ruling was erroneous because ‘failure to warn’ is only a subpart
of a strict liability claim and is not a cause of action in and of itself.”  Moreover, Benavides observes, he testified
without objection that he had never received a warning about the Groom Master’s
potential instability if turned while on a slope.

Marketing Defect Cause of Action

          In
Texas, section 402A of the Restatement (Second) of Torts governs strict
liability claims.  Am. Tobacco Co. v.
Grinnell, 951 S.W.2d 420, 426 (Tex. 1997). 
Under section 402A(1), a “defective” product is one that is
“unreasonably dangerous to the user or consumer.”  Restatement
(Second) of Torts § 402A(1) (1965); Grinnell, 951 S.W.2d at 426; Sims
v. Washex Mach. Corp., 932 S.W.2d 559, 561 (Tex. App.—Houston [1st Dist.]
1995, no writ).  A plaintiff may prove that
a product is “defective” if it is (1) unreasonably dangerous as manufactured,
(2) unreasonably dangerous as designed, or (3) unreasonably dangerous as
marketed because adequate warnings or instructions were not provided.  Grinnell, 951 S.W.2d at 426; Sims,
932 S.W.2d at 561–62.

          A
manufacturing defect exists if a product does not conform to the design
standards and blueprints of the manufacturer, and the flaw makes the product
more dangerous and therefore unfit for its intended or reasonably foreseeable
uses.  Sims, 932 S.W.2d at 562.  A product with a design defect complies with
all design specifications, but the design configuration is unreasonably
dangerous because the risk of harm associated with its intended and reasonably
foreseeable use outweighs its utility.  Id.  In contrast, a marketing defect occurs if a
defendant knows or should know of a potential risk of harm presented by a
product but markets it without adequately warning of the danger or providing
instructions for safe use.  Id.

          A
marketing defect claim and a design defect claim “are clearly distinct and
separable.  A marketing defect is found
‘if the lack of adequate warnings or instructions renders an otherwise adequate
product unreasonably dangerous.’  A
design defect focuses on a defect in the product itself, and whether safer
designs for the product were available.” 
Smith v. Aqua-Flo, Inc., 23 S.W.3d 473, 480 (Tex. App.—Houston
[1st Dist.] 2000, pet. denied) (quoting Caterpillar, Inc. v. Shears, 911
S.W.2d 379, 382 (Tex. 1995)); see also Lemond v. Lone Star Gas Co., 897
S.W.2d 378, 386 (Tex. App.—Fort Worth 1994), aff’d in part and rev’d in part
on other grounds, 897 S.W.2d 755 (Tex. 1995) (“In marketing defect cases,
the defective or unreasonably dangerous condition of the marketed product
arises not from the product itself, but because the seller fails to warn the
user of an improper use of the product.”). 
Thus, we reject Benavides’s assertion that “failure to warn”—or a
marketing defect claim—is “not a cause of action in and of itself.”

Evidence of Failure to Warn

          “[I]t
is not . . . proper to admit evidence unless it is addressed to or bears upon
some issue raised by the pleadings.”  Erisman
v. Thompson, 167 S.W.2d 731, 733 (Tex. 1943).  To determine whether a pleading includes a
particular claim, we examine the pleading from the perspective of the person
against whom the pleading is made.  Wilson
v. Bloys, 169 S.W.3d 364, 369 (Tex. App.—Austin 2005, pet. denied) (citing Erisman,
167 S.W.2d at 733).  This is because “[t]he
purpose of a pleading is to provide the defendant with fair notice of the cause
of action and character of evidence that will be raised at trial.”  Id.; see also Crain v. San Jacinto
Sav. Ass’n, 781 S.W.2d 638, 639 (Tex. App.—Houston [14th Dist.] 1989, writ
dism’d) (observing that purpose of pleadings “is to put the opposing party on
notice of the character of evidence that he will be called upon to meet,” and
to “place parameters on the forthcoming contest”).  In determining whether the plaintiff has
pleaded a particular cause of action, “we must be able to determine from the
pleadings alone the elements of the cause of action.”  Wilson, 169 S.W.3d at 369 (citing Fairdale
Ltd. v. Sellers, 651 S.W.2d 725, 725 (Tex. 1982)).

          Here,
Benavides did not plead either a marketing defect or a failure to warn; nor
does his petition set forth any of the elements of a marketing defect cause of
action.  Rather, it states claims for
design defect, manufacturing defect, and negligence, and it also seeks punitive
damages.[3]  Absent a pleading, the parties can
nonetheless try a claim by consent, or by trial amendment, but Benavides did
not request a trial amendment pertaining to a marketing defect cause of action.  In addition, the jury charge did not contain
a marketing defect issue—rather, the trial court submitted to the jury issues involving
design defect, negligence, and damages only. 
Benavides neither objected to this charge nor requested that the trial
court submit a marketing defect question to the jury.  Marketing defect thus was not one of
Benavides’s theories of recovery in this case—neither by pleading, nor by trial
amendment, nor by consent.  See JCW
Elecs., Inc. v. Garza, 176 S.W.3d 618, 625 (Tex. App.—Corpus Christi 2005,
no pet. h.) (“[W]here no element of a ground of recovery is submitted or
requested, and the entire theory is omitted from the charge, that ground of
recovery is waived.”); Tex. R. Civ. P.
279.  Accordingly, we hold that the trial
court did not abuse its discretion in excluding Dr. Wright’s testimony, which
was directed at proving the elements of a marketing defect cause of action.[4]

 

D.  Cumulative Expert Testimony

          In
his third issue, Benavides contends the trial court erred in allowing
cumulative expert testimony by Barnett that had already been given by James
Berkeley, Cushman’s corporate representative. 
Benavides called Berkeley as an adverse witness during his
case-in-chief.  Berkeley testified that,
in his opinion, the Groom Master was not defective.  During its case-in-chief, Cushman called its
outside expert, Barnett, to offer opinions about the safety of the Groom
Master.  Benavides objected to Barnett’s
testimony:

Q.      [Cushman’s
counsel]:      And have you come to a
conclusion or do you have an opinion about the Groom Master and whether it is a
stable vehicle or not?

 

A.      [Barnett]:     I do have an opinion.

 

[Benavides’s counsel]:     Your
Honor, before he gets to the opinion, may we approach real quick?

 

THE COURT:       Yes.

 

(Bench conference not on the record.)

 

[Benavides’s counsel]:     Your
Honor, we just want to make an objection, just for the record, that we object
to Mr. Barnett’s testimony to the extent that it is cumulative and duplicative
of the testimony that also [has] been given by Mr. Berkeley with regards to the
design of rollover protection systems and the need or the lack of need for the
rollover protection systems.  Just for
the record, Your Honor.

 

THE COURT:       The
objection’s overruled.

 

Benavides asserts that the trial
court should have excluded Barnett’s testimony under Texas Rule of Evidence 403
because his opinion on the issue of rollover protection systems “may be
understandable from a liability expert but for the fact that Mr. Berkeley had
already given an expert opinion on the same issue.”

          Rule
403 states that relevant evidence “may be excluded if its probative value is
substantially outweighed by . . . needless presentation of cumulative
evidence.”  Tex. R. Evid. 403.  We
acknowledge that portions of Barnett’s testimony are similar to Berkeley’s
testimony—for instance, both witnesses testified that the efficacy of rollover
protection systems depends on the use of seat belts because the protection
system itself becomes a hazard if the operator is not wearing a seat belt.  Barnett’s testimony, however, expounded on
Berkeley’s observations in several respects. 
Barnett pointed out that “[t]he problem [with rollover protection
systems] is that none of us in technology have been smart enough to figure out
how to make people wear seat belts.”  He
then elaborated on the reasons people offer for refusing to wear seat belts.  He further explained that the problem is
particularly pronounced for vehicles like the Groom Master, because the
operator is continually dismounting the machine so he can manually rake the sections
of the sand trap the Groom Master missed.[5]  In contrast, Berkeley merely acknowledged
that the effectiveness of rollover protection systems depends on seat belt use.

          Moreover,
under Rule 403, “[t]he test is not merely whether the evidence to be adduced
from the two witnesses is similar, but also whether the excluded testimony
would have added substantial weight to the offering parties’ case.”  Sims v. Brackett, 885 S.W.2d 450, 454
(Tex. App.—Corpus Christi 1994, writ denied). 
Berkeley testified as Cushman’s corporate representative, called
adversely by Benavides; Barnett, on the other hand, was a professor of
engineering at the Illinois Institute of Technology and was not a regular
employee of Cushman.  As such, Barnett’s
testimony concerning rollover protection systems added to Cushman’s case.  We therefore hold that the trial court did
not abuse its discretion in permitting Barnett to testify.  See id. at 453–54 (where
appellant offered testimony of two expert witnesses, one of whom was board
certified in general surgery only and was appellant’s friend, and the other of
whom was board certified in internal medicine and did not know appellant, holding
that trial court abused its discretion in excluding second expert’s testimony
as cumulative under Rule 403 because “[t]he difference in the two expert’s
[sic] credentials and [the second expert]’s lack of a personal relationship
with [appellant] in all likelihood would have enhanced [the second expert]’s
credibility compared to [the first expert]’s”).

E.  Incident Report

          In
his fourth issue, Benavides contends the trial court abused its discretion in
admitting, under the business records exception to the hearsay rule, an
incident report written by Benavides’s supervisor, Marshall Lee, on the day of
the accident.  Benavides asserts that the
incident report contains expert opinions and should not have been admitted because
Cushman did not designate Lee as an expert witness.  In the report, Lee describes the accident and
notes that “[t]he golf course has a lot of steep hills around the greens where
the traps exist.  You have to make turns
on equipment on level ground.”

Failure to Request Limiting
Instruction

          After
the trial court admitted the incident report, Benavides did not request that
the portions of the report containing the opinions to which he objected be
redacted; nor did he request a limiting instruction.  Pursuant to Rule 105(a),

[w]hen evidence which is admissible as to one party or
for one purpose but not admissible as to another party or for another purpose
is admitted, the court, upon request, shall restrict the evidence to its proper
scope and instruct the jury accordingly, but, in the absence of such request
the court’s action in admitting such evidence without limitation shall not be a
ground for complaint on appeal.

 

Tex. R.
Evid. 105(a).

          Here,
Benavides objected to three portions of the incident report that allegedly set
forth Lee’s expert opinions regarding what Benavides did unsafely, why he did
it that way, and what unsafe condition existed. 
Benavides did not object to the report in its entirety, and he did not
assert that the report was inadmissible as a business record—rather, he argued
that “whether or not this is a business record is immaterial” because the
report contains Lee’s expert opinions and Lee was not designated as an expert
witness.[6]

          Even
if Benavides is correct that certain portions of the report were inadmissible,
Benavides waived any complaint to general admission of the report by failing to
request that the offending portions be redacted and by failing to request a
limiting instruction.  See Birchfield
v. Texarkana Mem’l Hosp., 747 S.W.2d 361, 365 (Tex. 1987) (noting that party
waives any complaint to general admission of evidence if it fails to request
limiting instruction); Horizon/CMS Healthcare Corp. v. Auld, 985 S.W.2d
216, 225–26 (Tex. App.—Fort Worth 1999), aff’d in part and rev’d in part on
other grounds, 34 S.W.3d 887 (Tex. 2000) (holding that appellant waived any
complaint to general admission of investigation reports by failing to request
limiting instruction); cf. Pack v. Crossroads, Inc., 53 S.W.3d 492, 501
(Tex. App.—Fort Worth 2001, pet. denied) (holding that trial court did not
abuse its discretion in ruling that allegations of abuse and neglect contained
in hospital records were speculative and therefore subject to redaction).

Failure to Object

          Benavides
also waived any error in the admission of the incident report by failing to
object to the admission of Lee’s videotaped deposition, which was played for
the jury.  During his deposition, Lee authenticated
the incident report and discussed the contents of the report in the following
exchange:

Q:      [Cushman’s
counsel]:      What did you indicate [on
the report]?

 

A:      [Lee]:           I indicated it was -- he did this in
an unsafe manner.  “Turned machine over
on a steep hill” is what he -- he said he turned it over.  “Operator chose to do it this way” -- because
it has several steps in here that we had to go by on these reports.  And it says: “Why was this done this
way?”  “Operator chose to do it that
way.”

 

Benavides did not seek or receive a
ruling from the trial court about the report when Cushman offered Lee’s videotaped
deposition into evidence; nor did he object at trial to the preceding portion
of Lee’s testimony describing the contents of the incident report.  “[A]ny error in admitting evidence is cured
where the same evidence comes in elsewhere without objection.”  Schwartz v. Forest Pharms., Inc., 127
S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).  Here, Benavides failed to preserve error by
failing to object to Lee’s discussion of the contents of the incident report
during his videotaped testimony at trial. 
Accordingly, we hold that the trial court did not abuse its discretion
in admitting the incident report.

IV. 
CONCLUSION

          We
conclude that (1) Benavides could not be harmed by error, if any, in the trial
court’s ruling excluding evidence of prior similar incidents because the jury
heard extensive evidence about them later in the trial; (2) the trial court did
not abuse its discretion in excluding Dr. Wright’s testimony concerning failure
to warn because marketing defect was not one of Benavides’s theories of
recovery; (3) the trial court did not abuse its discretion in allowing Barnett
to testify about rollover protection systems because his testimony was not
cumulative, and it added to Cushman’s case; and (4) Benavides waived any error
in the admission of a workplace incident report by failing to request that it
be limited or redacted and by failing to object to the admission of Lee’s
videotaped deposition, during which Lee described the contents of the report.  We therefore affirm the judgment of the trial
court.

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Alcala and Bland.











[1] Benavides did not request, and the trial court did not
submit, a manufacturing defect question.

 

 





[2] Given our holding that Benavides introduced the
testimony proffered by Dr. Wright later during the trial, we do not evaluate
whether Dr. Wright’s testimony establishes that the prior incidents at issue
were “substantially similar” to the accident in this case so as to require the
trial court to admit them.  See Nissan
Motor Co. v. Armstrong, 145 S.W.3d 131, 138–39 (Tex. 2004).

 





[3] With respect to Benavides’s strict liability claims
against Cushman, the petition in its entirety alleges as follows:

            The
GROOM MASTER Sand Rake was defective in design and manufacture and presented an
unreasonable risk of injury resulting from such defects, which include, but are
not limited to the following:

a.                  
The Groom Master
had a dangerously high center of gravity when compared with its narrow track
width and short wheel base;

b.                 
The Groom
Master’s instability caused it to roll over;

c.                 
Exiting a sand
trap is a foreseeable event that should not cause loss of stability;

d.                 
The Groom
Master’s 3 wheel design is defective and unreasonably dangerous;

e.                 
The Groom Master
did not have roll over protection or seatbelts, this also made it defective and
unreasonably dangerous;

f.                  
The Groom Master
does not have a kill switch to turn the machine off in the event of a rollover.

In addition, during pretrial argument on various motions in limine,
counsel for Benavides told the trial court, “[H]ere’s what our case is
about.  Our case is about a defective
design.”

 





[4] Dr. Wright would have testified that, because Cushman
knew the Groom Master was “not stable in turning maneuvers,” the machine “ha[d]
to have some sort of warning on it to apprise the operator that even [with]
turns as slow as five miles an hour on slopes as little as ten, fifteen
degrees, the machine w[ould] go into a lateral upset and a lateral upset
c[ould] be extremely dangerous.”  Dr.
Wright also would have testified that his inspection of the Groom Master
revealed that the machine did not carry a warning label and “that the failure
to warn by the manufacturer was a proximate cause of th[e] accident.”  These are elements of a marketing defect
cause of action.  See Sims v.
Washex Mach. Corp., 932 S.W.2d 559, 562 (Tex. App.—Houston [1st Dist.]
1995, no writ) (to prevail on a marketing defect claim, the claimant must
prove, inter alia, that “a risk of harm . . . may arise from the intended
or reasonably anticipated use of the product,” that “the product supplier
actually knew . . . the risk of harm,” that “the absence of a warning . . .
render[ed] the product unreasonably dangerous,” and that “the failure to warn
[was] a causative nexus in the product user’s injury”).





[5] Barnett likened the Groom Master to parking meter
vehicles and mail trucks—in each scenario, the operator drives twenty feet,
jumps off the vehicle to check a parking meter or deliver mail, gets back in
the vehicle, drives another twenty feet, and repeats the process.  Barnett testified that under such
circumstances, the operator is highly unlikely to wear a seat belt.

 





[6] On appeal, Benavides contends the incident report was
inadmissible as a business record because the report was not attached to an
affidavit and no notice was given seeking to have the report admitted as a
business record.  Texas Rule of Evidence
902(10)(a) provides that “[a]ny record . . . which would be admissible under
Rule 803(6) [the business records exception to the hearsay rule] . . . shall be
admissible . . . upon the affidavit of the person who would otherwise provide
the prerequisites of Rule 803(6) . . . , provided further, that such record . .
. along with such affidavit are filed with the clerk of the court . . . at
least fourteen days prior to the day upon which trial of said cause commences .
. . .”  Tex.
R. Evid. 902(10)(a).  Here,
however, no business record affidavit was necessary because Lee laid the proper
foundation for admission of the incident report as a business record during his
testimony.  See Tex. R. Evid. 803(6) (allowing
foundation of business records to be established by testimony of qualified
witness).